**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **George Montgomery** | |
| *Plaintiff,* | No.  **2:19-cv-00940-MV-GJF** |
| *v.* | |
| **Continental Intermodal Group-Trucking LLC** | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF A RULE 23 CLASS SETTLEMENT** |
| *Defendant.* | |

Pursuant to the Parties' settlement agreement, Plaintiff files this Unopposed Motion for Preliminary Approval of a Rule 23 Class Settlement. *See* Fed. R. Civ. P. 23(e) (requiring court approval for a case to be voluntarily dismissed or settled—if that case involves a certified class or "a class proposed to be certified for purposes of settlement").

## I.    INTRODUCTION

This action was brought by George Montgomery ("Plaintiff") on behalf of himself and all others who worked as truck drivers in New Mexico for Continental Intermodal Group—Trucking, LLC ("Defendant" or "CIG") alleging that CIG failed to pay them overtime in accordance with the New Mexico Minimum Wage Act ("NMMWA"). Plaintiff brought these claims on behalf of a proposed class of all similarly situated truck drivers pursuant to Rule 23 of the Federal Rules of Civil Procedure. CIG denies these allegations and has asserted a number of affirmative defenses.

Prior to reaching an agreement to settle this matter, the parties engaged in discovery, including exchanging data about the proposed class. In addition, both parties moved for summary judgment on dispositive issues, which are pending before the Court.

After engaging in written discovery and submitting competing motions for summary

1

judgment, the parties agreed to mediate this case with Bill Lemons. On July 9, 2020, the parties attended an all-day mediation with Mr. Lemons. During mediation, the parties made significant progress toward settlement, but ultimately settlement negotiations stalled, and the parties were unable to reach a settlement at mediation. Thereafter, in the days and weeks following mediation, the mediator continued working with the parties to sustain settlement discussions and attempt to facilitate a settlement agreement. After numerous discussions between the parties and the mediator in the weeks following mediation, the mediator provided the parties with a mediator's proposal to settle this matter. Ultimately, both parties accepted the mediator's proposal by executing the Settlement Agreement *attached as* **Exhibit 1**.

Plaintiffs submit that the proposed settlement provides substantial benefit to the class members.  As set forth in the Settlement Agreement, the parties' proposed class action settlement would resolve the NMMWA overtime claims of a settlement class not to exceed 402 individuals. Specifically, the settlement agreement covers the following individuals (the "settlement class"):

> All current and former Truck Drivers who worked for Defendant, who at any time were based in Jal, New Mexico or Loving, New Mexico, or who performed more than 50% of their work hours in New Mexico, and who worked over forty (40) hours in at least one week in New Mexico within the three (3) years preceding October 4, 2019 and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (not to exceed 402 persons).

The proposed class action settlement creates a non-reversionary fund of $4,175,000. The settlement proposes an award of attorney's fees of 1/3 of the settlement fund and a reasonable incentive payment to named Plaintiff, George Montgomery.  After accounting for attorney's fees and costs, incentive payments, Plaintiff's counsel estimate that approximately $2,728,473.00 will be paid to the participating members of the settlement class.  Thus, even assuming full participation in the settlement, the average settlement share would be approximately $5,500, with many class members who worked the longest periods of time receiving a settlement share of more than

$10,000. Under no circumstances will any of the funds revert to Defendant. Plaintiff's counsel believe that given the risks and delays of continued litigation, the settlement is fair, reasonable, and adequate.

Pursuant to the Settlement Agreement, Plaintiff files this unopposed motion for preliminary approval of the settlement and respectfully requests that the Court issue an order: (1) preliminarily approving the settlement *attached as* **Exhibit 1**; (2) certifying the New Mexico Class pursuant to Fed. R. Civ. P. 23 for purposes of the notice and claims process; (3) appointing George Montgomery as Class Representative under Fed. R. Civ. P. 23; (4) approving Herrmann Law, PLLC and Lichten & Liss-Riordan, P.C. as Class Counsel; (5) approving as to form and content the Notice and Claim Form *attached as* **Exhibit 2**; (6) directing the mailing of the Notice and Claim Form by first class mail to the Class Members; and (7) approving the proposed schedule and procedure for seeking final approval of the Settlement Agreement. Defendant does not oppose this Motion.

## II.    BACKGROUND

### A.    Factual Background

The Parties have fully set forth respective summaries of the relevant facts in the motions for summary judgment and responses thereto. *See Pls Mot Summ. J.,* [Doc 26]; *Def Mot Summ. J.,* [Doc 28], *Pls Resp to Def Mot Summ. J.,* [Doc 35]; and *Def Resp to Pls Mot Summ. J.,* [Doc 31].

As discussed in those previous filings, CIG is a logistics company with transloading terminal operations and regional motor carrier operations located in New Mexico, Texas, and Oklahoma through which it coordinates the delivery of sand proppant to customer well sites. Relevant for purposes of this litigation, CIG operates two trucking terminals in New Mexico–one in Loving and one in Jal.

During the relevant period, Defendant employed Plaintiff and other individuals as truck drivers to haul sand to well-sites located throughout Texas and New Mexico. Defendant paid its truck drivers a salary, which Defendant contends is in compliance with federal law. Because CIG considered the drivers exempt from overtime pursuant to federal law, CIG did not compensate them for overtime at one and one-half their regular rates of pay for hours worked over forty (40) in each week. Similarly, CIG did not track or record the total number of compensated hours a driver incurred during a given shift or week, nor track or record whether the driver was nearing any specified amount of compensable time, or whether the driver incurred or is incurring overtime.

Plaintiff was among the first truck drivers Defendant hired in May of 2018. Plaintiff was originally assigned to work from Defendant's terminal in Loving, New Mexico, and later, was transferred to work from Defendant's terminal in Jal, New Mexico. At all times, Defendant paid Plaintiff a salary and did not compensate Plaintiff for overtime after forty (40) hours in a week.

The group of individuals (not to exceed 402 persons) comprising the settlement class are individuals (1)(a) who at any time were based in Jal, New Mexico or Loving, New Mexico, or (1)(b) who performed more than 50% of their work hours in New Mexico, and (2) who worked over forty (40) hours in at least one week in New Mexico in the three year period preceding October 4, 2019 and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours.

**B.     Relevant Provisions of NMMWA**

Plaintiff's central claim is that Defendant violated the NMMWA by failing to pay overtime to its truck drivers. The NMMWA requires employers to pay workers overtime at time-and-a-half for all hours worked over forty (40) per week, and the statute does not contain an exemption for individuals who operate a commercial truck, or any other exemption that would be relevant to

Plaintiff's work.[1]  However, Defendant contends that it is not obligated to pay its truck drivers overtime under the NMMWA on either of the following bases: 1) because the FAAAA preempts the NMMWA; or 2) because the NMMWA violates the Dormant Commerce Clause. *See Answer,* [Doc 4]; *see also Def Mot Summ. J.,* [Doc 28]; *Def Resp to Pls Mot Summ. J.,* [Doc 31].

### C.    Procedural History

On October 4, 2019, George Montgomery ("Plaintiff") filed this lawsuit on behalf of himself and a class of similarly situated individuals to recover unpaid overtime wages and other damages under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, et seq. *See* [Doc 1]. Defendant filed its Answer on November 20, 2019. *See Answer,* [Doc 4]. On, January 14, 2020, the parties submitted a Discovery Plan [Doc 10] and the Court held a Rule 16 telephonic phone conference on January 22, 2020. *See Clerk's Minutes Rule 16 Conference,* [Doc 11]. In light of Defendant's desire to resolve potentially dispositive issues at an early stage in the litigation, the Court entered an Interim Order setting the deadlines for written discovery and filing dispositive motions. *Interim Order Setting Deadlines,* [Doc 12]. Thereafter, the parties engaged in written discovery in anticipation of moving for summary judgment by the April 21, 2020 deadline.

On April 20, 2020, Plaintiff filed a motion for summary judgment [Doc 26]. On April 21, 2020, Defendant filed a motion for summary judgment [Doc 28]. Defendant responded to Plaintiff's motion on May 4, 2020 [Doc 31]. Plaintiff responded to Defendant's motion on May 8, 2020 [Doc 35].

---

[1]    In contrast, the Fair Labor Standards Act contains a "Motor Carrier Act" exemption pursuant to which a driver who operates a commercial vehicle weighing more than 10,001 pounds would be exempt from the FLSA's overtime pay and other requirements. *See* 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31101(1)(A); *Foxworthy v. Hiland Dairy Co.*, 997 F. 2d 670, 672 (10th Cir. 1993) (overtime requirements under the FLSA do not apply "to those employees for whom the Secretary of Transportation has power to establish qualifications and maximum hours").

Thereafter, in accordance with the parties' discussions with the Court during the April 28, 2020 Telephonic Conference (*Clerk's Minutes,* [Doc 29]), the parties advised the Court that they agreed to participate in private mediation, with a mediator to be jointly selected by the parties. On May 22, 2020, the parties submitted an agreed motion to stay all deadlines including summary judgment briefing while the parties attempted conciliation through formal mediation. *See Joint Mot to Stay,* [Doc 40]. Pursuant to the parties' agreed motion, the Court stayed all case deadlines and summary judgment briefing through August 6, 2020 pending the parties' mediation. *See Order Granting Stay,* [Doc 41]. Thereafter, the parties agreed to mediate with Bill Lemons and participated in a full day mediation on July 9, 2020.

### D. Potential Damages

During discovery, Plaintiff reviewed voluminous records of data related to the putative class members, including data necessary to formulate a calculation of potential damages. *See e.g., Decl of Rebecca Shufford in Supp of Pl's Resp to Def's Mot. Summ. J.*, [Doc 35-2]. After agreeing to mediation, Defendant produced additional data related to the putative class members to further facilitate Plaintiff's analysis of the claims, defenses, and calculation of damages at issue prior to mediation. Plaintiff's counsel undertook an extraordinary effort to review and analyze all of the data—approximately 80,000 pages of data—produced by Defendant. Although mediation was unsuccessful, following mediation, in connection with the parties' sustained settlement discussions, Plaintiff's counsel continued analyzing the data and refining their damages analysis to address various issues and concerns raised during mediation.

Defendant contends that the best evidence of hours worked is based upon the DOT log data. Plaintiff contends that the DOT log data is not accurate, and instead Plaintiff assert that Defendant's work schedules are the most accurate method of determining hours worked.

### III.    THE TERMS OF SETTLEMENT AGREEMENT ARE FAIR

#### A.    Monetary Terms

The settlement creates a non-reversionary fund of $4,175,000. The settlement funds would be distributed as follows:

$2,728,473.00   available for distribution to all participating class members

$1,391,527.00   attorneys' fees

$10,000.00       litigation costs and expenses

$25,000.00       incentive payment to Named Plaintiff, George Montgomery

$20,000.00       approximate costs of Third-Party Settlement Administration[2]

#### B.    Procedures for Calculating Settlement Shares and Distributing Settlement Funds

Plaintiff's counsel has developed a plan to distribute the funds based on the data that was produced in discovery, which they believe fairly and accurately distributes the funds to class members on a *pro rata* basis to estimate their proportionate share of any classwide damages award if the case were to proceed to trial and judgment.

Plaintiff began with the work schedules from Defendant's Loving and Jal, New Mexico locations.  From these documents, which were produced in discovery as DEF070088-DEF070155 and DEF069390-DEF070087, Plaintiff identified the class members who were scheduled to work out of the New Mexico locations for at least one week during the time period, and the schedules also revealed the total number of scheduled workweeks within that period for each person.

After determining each class member's number of workweeks relative to the class as a

---

[2]    As discussed below, Plaintiff's counsel will perform many of the settlement administration tasks "in-house," such as mailing all settlement notices, tracking claim forms and participation, and calculating all settlement shares. The third-party administrator will only be used to cut individual checks from the settlement fund and perform all tax reporting. By performing as many administrative tasks in-house as possible, Class Counsel will preserve more of the settlement funds to be distributed to class members.

whole., each class member's percentage of their share of the total workweeks will then be multiplied by the net settlement fund available for distribution to the class (approximately $2,728,473.00) to yield each class member's settlement share.

Plaintiff's counsel believes this formula of distributing the funds based on the number of workweeks is fair and reasonable, as nearly all drivers earned the same salary and all reported working similarly long shifts and full workweeks, so this method closely approximates their relative share of the potential overtime damages if they were to succeed at trial.

## C.    Release

Upon final approval of the Settlement Agreement, all class members (excluding those who timely opt-out of the settlement class) will release all statutory and common law claims asserted in the lawsuit or that could have been brought arising out of or related to the allegations of unpaid wages and unpaid overtime including claims under the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, et seq, against Defendant. *See Settlement Agrmt,* [Ex. 1 at pp 7-8]. The release period covers October 4, 2016 through the earlier of (1) the Class Member's termination date, or (2) the date the Court preliminarily approves the settlement. *Id.* at pp. 1-2.

## IV.    PRELIMINARY APPROVAL IS WARRANTED

### A.    Standard Governing Preliminary Approval

A district court considering a proposed class action settlement must determine whether the proposed settlement is fair, reasonable, and adequate. *See In re Integra Realty Res., Inc*., 354 F.3d 1246, 1266 (10th Cir. 2004). Class action settlements are favored, *see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005), and if the court finds the class action settlement to be fair, reasonable, and adequate, it must approve the settlement. *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984); *see also Jones v. I.Q. Data Int'l, Inc.*, No.

1:14-cv-00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *4 (D.N.M. 2015).

Federal Rule 23 – which concerns class actions and settlement of class action cases – was amended effective December 1, 2018. The amended Rule specifically addresses the standard for *preliminary* review of class action settlements in order to obtain settlement notice to putative class members. Where a class settlement is proposed, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1). Thus, amended Rule 23(e) makes clear that, at the preliminary approval stage, a district court must address two questions: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." As discussed below, each of these questions is answered in the affirmative.

## B.    Final Settlement Approval is Likely

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," a court must look to Rule 23(e)(2)'s newly-minted approval factors. The factors appear in Fed. R. Civ. P. 23(e)(2) under the heading "Approval of the Proposal":

> *(2) Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Because each of these factors are satisfied, as discussed below, Plaintiff respectfully requests this Court to grant this motion and preliminarily approve the parties' Settlement Agreement.

### 1.  Rule 23(e)(2)(A): <u>The class representative and class counsel have adequately represented the class.</u>

The first factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"). Here, this factor is likely to be satisfied because Plaintiff's counsel engaged in substantial discovery prior to moving for summary judgment and obtained and analyzed additional class-wide electronic data prior to mediation and reaching a settlement. The substantial discovery exchanged and the cross-motions for summary judgment provided class counsel with "an adequate appreciation of the merits of the case before negotiating," *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 531 (3d Cir. 2004) (citations omitted), and enabled them to "ferret out facts helpful to the prosecution of the suit," *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citation omitted); *see, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (granting preliminary approval where, even in absence of formal discovery, parties had "ample information from which to weigh the strengths and weaknesses of their claims"); *In re Domestic Air Transp. Antitrust Litig*., 148

F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, throughout this proceeding Plaintiff's counsel have effectively represented the class members' interests, and have dedicated significant time and eff,ort into prosecuting this action on the class members' behalf, attending a full-day mediation, responding to written discovery, analyzing voluminous discovery data, and briefing cross motions for summary judgment. In addition, named Plaintiff has likewise dedicated significant time and effort into this litigation by reviewing discovery, assisting in preparation of declarations supporting summary judgment, and providing class counsel with invaluable guidance through this litigation and the negotiation of the proposed settlement.

Class counsel have substantial experience litigating wage and hour cases. Specifically, Attorney Lichten has litigated a substantial number of cases involving a defendant's assertion that a state law overtime claim was preempted by the FAAAA—Defendant's primary defense in this case. *See Pls Mot Summ. J.,* [Doc 26]; *Def Mot Summ. J.,* [Doc 28], *Pls Resp to Def Mot Summ. J.,* [Doc 35]; and *Def Resp to Pls Mot Summ. J.,* [Doc 31]. Class counsel were able to draw on their prior experience in litigating similar preemption arguments to achieve a favorable settlement.

## 2.  Rule 23(e)(2)(B): <u>The proposal was negotiated at arm's length.</u>

The second factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 (Advisory Committee Notes). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011);  *see also Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because

the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

Here, the settlement was negotiated at arm's length after prolonged settlement negotiations—including a full day mediation session with renowned mediator, William Lemons. Thereafter, in the days and weeks following mediation, the parties sustained their efforts and negotiations through Mr. Lemons, which ultimately resulted in the parties reaching a settlement agreement. *See Sandoval v. Tharaldson Employee Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); accord *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). In sum, the arms-length nature of the settlement negotiations is reflected in, both, the process by which the settlement was reached and the resulting settlement terms.

### 3. Rule 23(e)(2)(C)(i)–(iv)

### i. Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.

The third factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 (Advisory Committee Notes). "Often, courts may need to forecast the likely range of possible class-wide recoveries and the likelihood

of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id*.[3] This factor is likely to be satisfied for the following reasons:

First, the settlement provides substantial monetary payments to the class members. Here, class members will receive a percentage of the settlement based upon the number of workweeks where class members were assigned to a terminal in New Mexico.

Second, the settlement enables class members to avoid real litigation risks. Defendant has contested this litigation at all stages. Defendant filed a motion for summary judgment seeking to dismiss these claims as a matter of law on Defendant's contention that Plaintiff's claims are preempted by the FAAAA and because Plaintiff's claims violate the Dormant Commerce Clause. Defendant also disputes the calculation of the number of overtime hours actually worked by Plaintiff and the Class Members. Finally, though Defendant does not contest class certification for purposes of settlement only, Defendant was prepared to challenge whether Plaintiff would ultimately obtain class certification.

---

[3]    *See also Grady v. de Ville Motor Hotel, Inc*., 415 F.2d 449, 451 (10th Cir. 1969) ("the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial. . . ."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum"); *Gilliam v. Addicts Rehabilitation Center Fund*, 2008 U.S. Dist. LEXIS 23016, *13 (S.D.N.Y. Mar. 24, 2008) (settlement's reasonableness "must be weighed against 'speculative payment of a hypothetically larger amount years down the road'"); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . . ."); *accord Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Lastly, the settlement enables the class members to avoid significant delay. The parties' cross-motions for summary judgment remain pending before the Court. In addition, Plaintiff had not yet filed a motion for class certification. Even if both Plaintiff's pending motion for summary judgment and forthcoming motion for class certification were resolved in Plaintiff's favor, there would still be additional discovery, additional summary judgment briefing on the issue of damages, and eventually trial. It is also likely that either side would have sought an appeal of any unfavorable decisions or appeal of any trial verdict.

In any event, "[i]t has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'" *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974). So given the outstanding questions of law and fact that exist, placing the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable money at stake, the value of the class action settlement outweighs the mere possibility of future relief after protracted and expensive litigation.

> ii. **Rule 23(e)(2)(C)(ii): <u>The relief provided for the class is adequate, taking into account the effectiveness of any the proposed method of distributing relief to the class including the method of processing class-member claims if required.</u>**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 (Advisory Committee Notes). This factor is likely to be satisfied because, the settlement notice process is straightforward and class members can opt-out of the settlement by simply communicating their wish to exclude themselves from the settlement class it to Class Counsel.

### iii. Rule 23(e)(2)(C)(iii): The relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including the timing of payment.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23 (Advisory Committee Notes). Here, this factor is likely to be satisfied because Plaintiff's counsel's requested fee falls within Second Circuit norms. In particular, Plaintiff's counsel seeks combined attorney's fees representing 33% of the common settlement fund, along with a request for costs of approximately $30,000.00, which includes approximately $20,000.00 for the costs associated with hiring a third-party settlement administrator. The above fee is neither surprising nor excessive.

Courts in the Tenth Circuit, including district courts in New Mexico, hold that the "percentage of recovery" method is the predominant method of assessing attorney's fees in class action settlements. *See, e.g., Ramah Navajo Chapter v. Jewell*, 167 F. Supp. 3d 1217, 1242 (D.N.M. 2016) (holding that "attorneys' fees should be evaluated using the percentage of the fund method without a lodestar analysis.") (citations omitted); *Ramah Navajo Chapter v. Jewell*, 167 F. Supp. 3d 1217, 1241 (D.N.M. 2016) ("The Tenth Circuit has made it clear that district courts need not calculate a lodestar when applying the percentage method. . . . [T]he Court will award a reasonable percentage of the fund as attorneys' fees without a lodestar analysis or cross check.") (collecting cases); *Brown*, 838 F.2d at 456 (holding that "in awarding attorneys' fees in a common fund case, the 'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors"); *Uselton*, 9 F.3d at 853 (finding that *Brown* "recognized the propriety of awarding attorneys' fees in [common fund cases] on a percentage of the fund, rather than lodestar

basis"); *Gottlieb*, 43 F.3d at 487 (holding district court abused its discretion by replacing "the percentage fee method . . . with the lodestar plus multiplier method.").

Second, under the percentage-of-recovery method, district courts in the Tenth Circuit regularly approve fees equaling or exceeding one-third of the common settlement fund. *See, e.g.*, *Fankhouser v. XTO Energy, Inc.*, 2012 U.S. Dist. LEXIS 147197, 2012 WL 4867715, *3 (W.D. Okla. Oct. 12, 2012) (awarding 36% without lodestar cross check); *Fitzgerald Farms*, 2015 Okla. Dist. LEXIS 2, 2015 WL 5794008, at *3 (awarding 40% fee of $119 million common fund); *McClintock v. Continuum Producer Servs., L.L.C.*, 2020 U.S. Dist. LEXIS 97746, *20 (E.D. Okla. June 4, 2020) (awarding a 33 ⅓% fee in class action settlement); *Chieftain Royalty Co. v. Laredo Petro., Inc.*, No. CIV-12-1319, 2015 U.S. Dist. LEXIS 62450 (W.D. Okla. May 13, 2015) (Docket No. 52 at 5) (the "*Laredo* Fee Order") ("Class Counsel's request of forty percent (40%) of the $6,651,997.95 Settlement Amount is within the acceptable range of attorneys' fees approved by Oklahoma Courts as being fair and reasonable in contingent fee class action litigation ..."); *Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, Dkt. No. 182, 2013 U.S. Dist. LEXIS 195004 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement) (the "*QEP* Fee Order"); *Reirdon v. XTO Energy Inc.*, No. 6:16-cv-00087-KEW, 2018 U.S. Dist. LEXIS 225941, at *24 (E.D. Okla. 2018) (approving a 40% fee in a class action settlement); *Droegemueller v. Petroleum Devel. Corp.*, 2009 U.S. Dist. LEXIS 123875, 2009 WL 961539, *4 (D. Colo. Apr. 7, 2009) (awarding 33 1/3% without a lodestar cross check); *Lewis v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 87681, 2006 WL 3505851, *2 (N.D. Okla. Dec. 4, 2006) (awarding 33 1/3% without calculating lodestar); *Williamson v. Ameriflow Energy Servs., L.L.C*, 2017 U.S. Dist. LEXIS

66209, *5 (D.N.M. May 1, 2017) (observing that the lodestar amount exceeded the 40% contingent fee sought, the court awarded a 40% contingent fee in an FLSA (non-Rule 23 class) settlement).

Given that the parties engaged in voluminous discovery, submitted extensive briefing on their cross-motions for summary judgment, and engaged in prolonged settlement discussions including a full day of mediation accompanied by detailed, class-wide damages analysis, a fee of 33% is reasonable.

### iv. Rule 23(e)(2)(C)(iv): The relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(3).

Under this factor, the parties are required to "file a statement identifying any agreement made in connection with the proposal." Here, the accompanying Settlement Agreement *attached as* **Exhibit 1** is the only agreement connected to this settlement. Therefore, this factor is satisfied.

### 4. Rule 23(e)(2)(D): The proposal treats class members equitably relative to each other.

The final factor seeks to prevent the "inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23 (Advisory Committee Notes). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id*. Here, all class members asserted claims for unpaid overtime wages under the NMMWA, and therefore, settlement shares for each class member will be derived using an identical formula applied to all class members. Therefore, because there is only a single claim at issue and the settlement shares will be calculated using an identical formula, all class members are treated equitably relative to each other.

Though the named Plaintiff will receive an additional incentive payment, the requested incentive payment is within the range regularly approved in similar wage and hour cases. *See, e.g.,*

*Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. 2015) (approving incentive award of $20,000.00); *Fager v. Centurylink Communs., LLC*, No. 14-cv-00870 JCH/KK, 2015 U.S. Dist. LEXIS 190790, at *24 (D.N.M. 2015); *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. App'x. 232, 235 (10th Cir. Sept. 11, 2009) "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.") (unpublished) (internal quotation marks and citation omitted); *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 U.S. Dist. LEXIS 144366, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (unpublished) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.") (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, 2009 U.S. Dist. LEXIS 82522, 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (unpublished) ("The practice of granting incentive awards to Class Representatives is common and widespread in class litigation.") (citations omitted); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement).

**C.    The proposed settlement class will satisfy the prerequisites for class certification**

Having determined that the parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: Whether the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four requirements: (1) numerosity; commonality; (3) typicality; and (4) adequacy of representation. Next, they must satisfy Rule

23(b)(3)'s two additional requirements: (5) common questions of law or fact must predominate over any questions affecting only individual members; and (6) a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. *See generally Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188-89 (10th Cir. 2002); *McClintock v. Continuum Producer Servs., LLC*, No. CIV-17-259-JAG, 2020 U.S. Dist. LEXIS 100677, at *2 (E.D. Okla. 2020).

At the final approval stage, Plaintiff will ask the Court to certify the following settlement class:

> all current and former Truck Drivers who worked for Defendant, who at any time were based in Jal, New Mexico or Loving, New Mexico, or who performed more than 50% of their work hours in New Mexico, and who worked over forty (40) hours in at least one week in New Mexico within the three (3) years preceding October 4, 2019 and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (not to exceed 402 persons).

As discussed below, Plaintiff is likely to satisfy each of the six requirements under Rule 23 for class certification.

### 1. Numerosity

Numerosity exists where the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Tenth Circuit, the Court has "wide latitude" in determining whether the numerosity requirement has been met. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) (there is "no set formula to determine if the class is so numerous that it should be so certified."); *see also, Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 669 (D.N.M. 2015) ("plaintiffs may establish that joinder would be impracticable with as few as fifty members.") (citations omitted); *Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, 2020 U.S. Dist. LEXIS 98628, at *16 (D.N.M. 2020) (finding numerosity requirement

satisfied where defendants employed 150 putative class members within the relevant class period); *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."); *McCown v. Heidler*, 527 F.2d 204 (10th Cir. 1975) (262 class members).

Here, where the putative class consists of approximately 402 class members, the numerosity requirement is satisfied.

### 2. Commonality

Commonality exists where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is not a demanding standard, as it "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims." Haddock v. Nationwide Financial Services, Inc., 262 F.R.D. 97, 116 (D.Conn.2009) (quotation omitted).

"For a common question of law to exist, the putative class must share a discrete legal question of some kind. Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Hauff v. Petterson*, No. 1:09-CV-00639 PJK-DJ, 2009 WL 4782732, at *5 (D.N.M. Dec. 11, 2009) (internal quotation omitted) (J. Kelly). "[D]iffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal*, 882 F.3d at 914 (quoting *Colo. Cross Disability Coal.*, 765 F.3d at 1216); *Jacob*, 289 F.R.D. 408 at 416 ("Courts tend to interpret typicality as requiring that the class members' claims 'arise[ ] from the same course of events,' meaning 'each class member [must] make[ ] similar legal arguments to prove the defendant's liability.'") (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)) *Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, 2020 U.S. Dist. LEXIS 98628, at *25 (D.N.M. 2020).

Indeed, in this case, the determination of whether Plaintiff and the Class Members are entitled to overtime under the New Mexico Minimum Wage Act is based on a central legal question applicable to all Class Members—whether the FAAAA or Dormant Commerce Clause preempts the NMMWA such that CIG would be relieved of paying overtime pursuant to New Mexico state law.

### 3. Typicality

"Concerning typicality, the named plaintiff's claim must be 'typical of the claim[] ... of the class.'" *Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, 2020 U.S. Dist. LEXIS 98628, at *25 (D.N.M. 2020) (quoting Fed. R. Civ. P. 23(a)(3)). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory."*Menocal*, 882 F.3d at 914 (quoting *Colo. Cross Disability Coal.*, 765 F.3d at 1216); *Jacob*, 289 F.R.D. 408 at 416 ("Courts tend to interpret typicality as requiring that the class members' claims 'arise[ ] from the same course of events,' meaning 'each class member [must] make[ ] similar legal arguments to prove the defendant's liability.'") (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims. *See generally Id.*

Here, Plaintiff was a truck driver for CIG, assigned to CIG's terminals in New Mexico, and was not compensated for hours worked over forty (40) in each workweek at a rate of one and one-half his regular rate of pay. Plaintiff seeks relief for the same injury (i.e., unpaid overtime) based on the same underlying facts (i.e. CIG's failure to pay overtime to its truck drivers in accordance with the NMMWA). Plaintiff's claims for overtime, therefore, are typical of the putative class members—truck drivers assigned to New Mexico terminals who were not paid

overtime.

### 4. Adequacy

The prerequisite stated in Rule 23(a)(4) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determination of adequacy typically "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, the named Plaintiff has suffered the same harm suffered by all class members suffered, and named Plaintiff seeks relief on behalf of the entire class. Named Plaintiff, along with a few of the putative class members, have assisted Class Counsel in advancing this litigation on behalf of the entire class. Plaintiff does not have any individual interests that conflict with that of the putative class members.

As for the adequacy of class counsel, Lichten & Liss-Riordan, P.C. has extensive experience in class action overtime litigation. *Scovil*, 886 F. Supp. 2d at 48 (finding adequacy of class counsel and noting that Attorney Lichten "has extensive experience in class action litigation [and] employment litigation[.]") Further, counsel at Herrmann Law, PLLC have extensive experience representing plaintiffs in wage and hour litigation in federal courts across the country. All counsel have dedicated significant time and resources to advancing this litigation on behalf of the class, and all are adequate class counsel.

### 5. Predominance

"Rule 23(b)(3) ... requires the party seeking certification to show that 'questions of law or fact common to class members predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). The requirement's purpose is to

"ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.; Shelter Realty Corp. v. Allied Maintenance Corp*., 75 F.R.D. 34, 37 (S.D.N.Y. 1977) ("The predominance requirement calls only for predominance, not exclusivity, of common questions.").

Here, the overtime claims asserted by Plaintiff will rise or fall based on a purely legal issue—whether the FAAAA preempts the NMMWA or whether the NMMWA violates the dormant commerce clause. Therefore, common issues predominate.

### 6.  Superiority

Rule 23's "superiority" requirement is met where class treatment would ensure "efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Rodolico v. Unisys Corp*., 199 F.R.D. 468, 479 (E.D.N.Y.2001). Class treatment is far more efficient and superiority is satisfied because there will be a central question to resolve—whether the NMMWA is preempted. Once that question is resolved, either the lawsuit is over, or there are damages to be calculated.

### V.     CONCLUSION & PRAYER

Accordingly, Plaintiff respectfully requests that this Court issue an order: (1) preliminarily approving the settlement *attached as* **Exhibit 1**; (2) certifying the New Mexico Class pursuant to Fed. R. Civ. P. 23 for purposes of the notice and claims process; (3) appointing George Montgomery as Class Representative under Fed. R. Civ. P. 23; (4) approving Herrmann Law, PLLC and Lichten & Liss-Riordan, P.C. as Class Counsel; (5) approving as to form and content the Notice and Claim Form *attached as* **Exhibit 2**; (6) directing the mailing of the Notice and Claim Form by first class mail to the Class Members; and (7) approving the proposed schedule

and procedure for seeking final approval of the Settlement Agreement.

Respectfully submitted,


By: /s/ Drew N. Herrmann
        **HERRMANN LAW, PLLC**
        Drew N. Herrmann
        N.M. Federal Bar No. 19-201
        drew@herrmannlaw.com
        Pamela G. Herrmann
        N.M. Federal Bar No. 19-215
        pamela@herrmannlaw.com
        801 Cherry St., Suite 2365
        Fort Worth, TX 76102
        Phone: 817-479-9229
        Fax: 817-887-1878

      -AND-

        **LICHTEN & LISS-RIORDAN, P.C.**
        Harold L. Lichten, *pro hac vice*
        Massachusetts BBO # 549689
        Matthew Thomson, *pro hac vice*
        Massachusetts BBO # 682745
        729 Boylston Street, Suite 2000
        Boston, MA 02116
        Tel. 617-994-5800
        Fax: 617-994-5801
        hlichten@llrlaw.com
        mthomson@llrlaw.com

        ATTORNEYS FOR PLAINTIFF
        AND CLASS MEMBERS


CERTIFICATE OF SERVICE

I certify that on October 1, 2020 a true and correct copy of the above document will be served via CM/ECF.


        */s/ Drew N. Herrmann*
        Drew N. Herrmann

24