IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **George Montgomery**<br><br>       *Plaintiff,*<br><br>*v.*<br><br>**Continental Intermodal Group-Trucking LLC**<br><br>       *Defendant.* | No. 2:19-cv-00940-MV-GJF<br><br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF A RULE 23 CLASS ACTION SETTLEMENT** |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
A RULE 23 CLASS ACTION SETTLEMENT**

TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 3

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS ..................... 5

    A.  Summary of the Litigation ...................................................................... 5

    B.  Mediation and Settlement ....................................................................... 6

    C.  Preliminary Approval and Notice to the Class ....................................... 7

III.  THE SETTLEMENT PROVIDES THE CLASS WITH SUBSTANTIAL RELIEF ............... 7

    A.  Monetary Terms ..................................................................................... 7

    B.  Procedures for Calculating Settlement Shares and Distributing Settlement Funds .. 8

IV.  FINAL CLASS CERTIFICATION UNDER RULE 23 IS APPROPRIATE ..................... 10

    A.  Numerosity ........................................................................................... 10

    B.  Commonality ........................................................................................ 11

    C.  Typicality ............................................................................................. 12

    D.  Adequacy .............................................................................................. 13

    E.  Predominance ....................................................................................... 13

    F.  Superiority ............................................................................................ 14

V.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND MEETS ALL CRITERIA FOR FINAL APPROVAL ............................................................................................. 15

    A.  The Settlement Satisfies the Rule 23 Test for Fairness ........................ 17

        1.  Rule 23(e)(2)(A): The class representative and class counsel have adequately represented the class. ..................................................................... 17

        2.  Rule 23(e)(2)(B): The proposal was negotiated at arm's length .................... 18

        3.  Rule 23(e)(2)(C)(i)–(iv) ................................................................. 19

        4.  Rule 23(e)(2)(D): The settlement treats class members equitably relative to each other. ................................................................................ 26

    B.  The Settlement also Satisfies the Tenth Circuit's Rutter Factors............ 28

VI.  CONCLUSION & PRAYER ................................................................................ 31

In accordance with this Court's Order Preliminarily Approving Rule 23 Settlement [Doc. 46], Plaintiff George Montgomery ("Plaintiff") files this Unopposed Motion for Final Approval of a Rule 23 Class Action Settlement. *See* Fed. R. Civ. P. 23(e) (requiring court approval of a settlement that involves "a class proposed to be certified for purposes of settlement").

## I.    INTRODUCTION

On October 15, 2020, the Court preliminarily approved the parties' proposed settlement, approved the form and content of the notice, and ordered notice to be disseminated to the class. *See Order Prelim. Approval,* [Doc. 46 at pp 2-3]. The parties' settlement provides Plaintiff and a proposed Rule 23 class with a non-reversionary gross settlement of $4,175,000.00. *See Pls Mot Prelim Approval*, [Doc. 44 pp 2 and 7]; *see also Settlement Agreement*, [Doc. 44-1 at p. 3].

In accordance with the Court's preliminary approval order, class counsel[1] disseminated the Court-approved notice of settlement to the Class on November 13, 2020. *See Thomson Decl*, (Ex. 3 at p. 2 ¶ 4). To date, a total of 407 Class Members returned claim forms, representing an 82% participation rate, a substantial level of participation for a case of this nature that is the result of Class Counsel's notice process and outreach to class members. *See Thomson Decl*, (Ex. 3 at p. 3 ¶ 10). Importantly, not a single class member has objected to the settlement and only three (3) Class Members elected to opt-out of the Settlement.[2] *See Herrmann Decl*, (Ex. 1 at p. 3 ¶ 10); *Thomson Decl*, (Ex. 3 at pp. 4-5 ¶¶ 17-18).

The overwhelmingly favorable response Class Counsel received from the class and the fact

---

[1] As set forth in Plaintiff's Motion for Preliminary Approval, to preserve more of the settlement funds for distribution to the class members, class counsel agreed to perform many of the settlement administration tasks "in-house," such as mailing all settlement notices, tracking claim forms and participation, and calculating all settlement shares. The third-party administrator will only be used to cut individual checks from the settlement fund and perform all tax reporting. By performing as many administrative tasks in-house as possible, Class Counsel will preserve more of the settlement funds to be distributed to class members.

[2] The three Class Members who opted-out of the Settlement are: (1) Nathaniel Evans; (2) Marcus Hubbard; and (3) Juan Chavez. *See Notices of Filing Opt-Outs,* [Doc. 47] and [Doc. 48].

that not a single class member objected is indicative of the adequacy of the settlement and the Court-approved notice of settlement and further supports final approval. *See Hyland v. HomeServices of Am., Inc.*, 3:05-CV-612-R, 2012 WL 1575310, at *7 (W.D. Ky. May 3, 2012) (quoting *In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508, 527 (E.D. Mich. 2003)) ("If only a small number [of objections] are received, the fact can be viewed as indicative of the adequacy of the settlement.")

Indeed, the settlement provides substantial benefit to the class members. *See Herrmann Decl*, (Ex. 1 at p. 3 ¶ 8). As set forth in the parties' Settlement Agreement, the settlement would resolve the class members' NMMWA overtime claims. The settlement creates a fund of $4,175,000.00 that is non-reversionary, such that under no circumstances will a single dollar revert to Defendant and the full settlement fund will be paid. The settlement provides an award of attorney's fees to Class Counsel in the amount of 1/3 of the settlement fund, which, as discussed below, is consistent with fee awards in common fund class settlements. *See Herrmann Decl*, (Ex. 1 at p. 4 ¶ 13); see also Section A3 at p 23, infra. After accounting for attorney's fees and costs, the incentive payment to Plaintiff, and the amount held in the reserve fund, a non-reversionary net settlement fund of $2,628,473.00 will be distributed among the 407 class members. Thus, the average settlement share for a participating class member is almost $6,500, and class members who participate are recovering approximately $348 for each week in which they worked for Defendant during the relevant time period.  This constitutes a substantial recovery and the settlement therefore offers significant advantages to Settlement Participants over the continued litigation of this case and, given the risks and delays of continued litigation, Class Counsel believe that the settlement is fair, reasonable, and adequate. *See Herrmann Decl*, (Ex. 1 at p. 3 ¶ 8).

Accordingly, Plaintiff respectfully requests this Court to issue a final order: 1) granting

final approval of the Settlement Agreement; 2) granting final certification of the Rule 23 Class for purposes of settlement; 3) approving of Plaintiff's service award; and 4) approving of Class Counsel's request for attorneys' fees and costs. Defendant is not opposed to this motion.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Summary of the Litigation

On October 4, 2019, Plaintiff filed this lawsuit on behalf of himself and a class of similarly situated individuals to recover unpaid overtime wages and other damages under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, et seq. *See* [Doc 1]. Defendant filed its Answer on November 20, 2019. *See Answer,* [Doc 4].

Plaintiff's central claim is that Defendant violated the NMMWA by failing to pay overtime to its truck drivers. The NMMWA requires employers to pay workers overtime at time-and-a-half for all hours worked over forty (40) per week, and the statute does not contain an exemption for individuals who operate a commercial truck, or any other exemption that would be relevant to Plaintiff's work.[3]  Defendant contends that it is not obligated to pay its truck drivers overtime under the NMMWA on either of the following bases: 1) because the FAAAA preempts the NMMWA; or 2) because the NMMWA violates the Dormant Commerce Clause of the United States Constitution. *See Answer,* [Doc 4]; *see also Def Mot Summ. J.,* [Doc 28]; *Def Resp to Pls Mot Summ. J.,* [Doc 31].

On, January 14, 2020, the parties submitted a Discovery Plan [Doc 10] and the Court held a Rule 16 telephonic conference on January 22, 2020. *See Clerk's Minutes Rule 16 Conference,* [Doc 11]. In light of Defendant's desire to resolve potentially dispositive issues at an early stage

---

[3]    In contrast, the Fair Labor Standards Act contains a "Motor Carrier Act" exemption pursuant to which a driver who operates a commercial vehicle weighing more than 10,001 pounds would be exempt from the FLSA's overtime pay and other requirements.  *See* 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31101(1)(A); *Foxworthy v. Hiland Dairy Co.*, 997 F. 2d 670, 672 (10th Cir. 1993) (overtime requirements under the FLSA do not apply "to those employees for whom the Secretary of Transportation has power to establish qualifications and maximum hours").

in the litigation, the Court entered an Interim Order setting the deadlines for written discovery and filing dispositive motions. *Interim Order Setting Deadlines,* [Doc 12]. Thereafter, the parties engaged in written discovery in anticipation of moving for summary judgment by the April 21, 2020 deadline.

On April 20, 2020, Plaintiff filed a motion for summary judgment [Doc 26]. On April 21, 2020, Defendant filed a motion for summary judgment [Doc 28]. Defendant responded to Plaintiff's motion on May 4, 2020 [Doc 31]. Plaintiff responded to Defendant's motion on May 8, 2020 [Doc 35]. The cross-motions for summary judgment are still pending before the Court.

Thereafter, in accordance with the parties' discussions with the Court during the April 28, 2020 telephonic conference (*Clerk's Minutes,* [Doc 29]), the parties advised the Court that they agreed to participate in private mediation.  On May 22, 2020, the parties submitted an agreed motion to stay all deadlines, including summary judgment briefing, pending mediation. *See Joint Mot to Stay,* [Doc 40]. Pursuant to the parties' agreed motion, the Court stayed all deadlines and summary judgment briefing through August 6, 2020 pending mediation. *See Order Granting Stay,* [Doc 41].

## B.    Mediation and Settlement

Prior to mediation, Class Counsel reviewed voluminous records and data that Defendant produced in discovery, including data necessary to evaluate the parties' claims and defenses and to formulate a calculation of potential damages. *See e.g., Herrmann Decl,* (Ex. 1 at p. 2 ¶ 5); *Thomson Decl,* (Ex. 3 at pp. 3-4 ¶ 12); *Decl of Rebecca Shufford in Supp of Pl's Resp to Def's Mot. Summ. J.,* [Doc 35-2]. After the parties agreed to mediate, Defendant produced additional data related to the putative class members to further facilitate Plaintiff's analysis of the claims, defenses, and calculation of damages at issue prior to mediation. *See Herrmann Decl,* (Ex. 1 at pp. 2, 4 ¶¶ 6, 14).

On July 9, 2020, the parties attended an all-day mediation with William "Bill" Lemons. *See Herrmann Decl*, (Ex. 1 at p. 2 ¶ 6). During mediation, the parties made significant progress toward settlement, but were unable to reach a settlement that day. *Id.* In the following weeks, Mr. Lemons continued to work with the parties. *Id.* After several weeks of settlement discussions, Mr. Lemons presented the parties with a mediator's proposal. *Id.* Ultimately, the mediator's proposal resulted in the parties settling on the terms set forth in the Settlement Agreement. *Id.*

## C.    Preliminary Approval and Notice to the Class

On October 1, 2020, Plaintiff filed an Unopposed Motion for Preliminary Approval of Rule 23 Class Action Settlement. [Doc. 44]. The Court granted preliminary approval of the settlement and ordered class counsel to distribute notice of the class action settlement to the class. *See Order Prelim. Approval,* [Doc. 46 at pp 2-3]. Class Counsel disseminated the Court-approved notice via First Class Mail and email to all class members, and a reminder mailing and reminder email were later sent to class members who did not initially respond. *See Thomson Decl*, (Ex. 3 at pp. 2-3 ¶¶ 4-8). For any mailed notices returned as undeliverable, Class Counsel performed address searches to locate new addresses and re-mailed the notice materials when new addresses were located. *Id.* at p. 2 ¶ 5. After notices were disseminated, no objections were raised by any class member and only three (3) class members opted out from the settlement.[4] *See Herrmann Decl*, (Ex. 1 at p. 3 ¶ 10); *Thomson Decl*, (Ex. 3 at pp. 4-5 ¶¶ 17-18). Plaintiff now files this unopposed motion seeking final approval of the settlement.

### III.    THE SETTLEMENT PROVIDES THE CLASS WITH SUBSTANTIAL RELIEF

## A.    Monetary Terms

The Total Gross Settlement Amount consists of a non-reversionary Cash Settlement

---

[4] The three Class Members who opted out of the Settlement are as follows: (1) Nathaniel Evans; (2) Marcus Hubbard; and (3) Juan Chavez. *See Notices of Filing Opt-Outs,* [Doc. 47] and [Doc. 48].

Payment by Defendant of Four Million One Hundred Seventy-Five Thousand Dollars ($4,175,000.00). This is not a "reversionary" Settlement, meaning none of the Gross Settlement Amount will revert to Defendant. The Gross Settlement Amount will be distributed as follows:

**$2,742,549.82**    for distribution to participating class members[5]

**$1,391,527.00**    for attorneys' fees

**$8,350.18**    for litigation costs and expenses[6]

**$25,000.00**    for incentive payment to George Montgomery

**$7,573.00**    for cost of Third-Party Settlement Administrator[7]

In sum, the Settlement valued at $4,175,000.00 is provides the Class Members a substantial and immediate recovery. *See Herrmann Decl*, (Ex. 1 at p. 3 ¶¶ 8-9). In advance of negotiations, Class Counsel received and analyzed data reflecting class members' employment information and payroll information, which permitted Class Counsel to evaluate the claims and recoverable damages. *See Id.* at p. 4 ¶ 14. The Settlement in this case represents a substantial benefit for the Class after a thorough analysis and investigation by Class Counsel. *See Id.* at p. 3 ¶ 8.

**B.    Procedures for Calculating Settlement Shares and Distributing Settlement Funds**

Class Counsel will distribute the funds based on the data that was produced in discovery, which they believe fairly and accurately distributes the funds to class members on a *pro rata* basis to estimate their proportionate share of any class-wide damages award if the case were to proceed to trial and judgment. *See Thomson Decl*, (Ex. 3 at p. 4 ¶ 13). Plaintiff began with the work

---

[5] As described below, a reserve fund in the amount of $114,076.82 will be held "in reserve" from the initial distribution to the class members.

[6] The actual amount of costs incurred is less than the $10,000 in costs that was estimated and sought in Plaintiff's Motion for Preliminary Approval.

[7] The costs of the third-party administrator were originally estimated at $20,000.00. However, because Class Counsel agreed to perform many of the settlement administration tasks in-house, the third-party administrator will only be used to cut individual checks from the settlement fund and perform all tax reporting. By performing as many administrative tasks in-house as possible, Class Counsel was able to preserve more of the settlement funds to be distributed to class members.

schedules and DOT log data from Defendant's Loving and Jal, New Mexico locations. *See Id.* at pp. 3-4 ¶ 12. From these documents, Plaintiff identified the class members who were scheduled to work out of the New Mexico terminals in at least one week during the time-period (or alternatively, drove the majority of their miles per workweek in New Mexico), and the schedules also revealed the total number of scheduled workweeks within that period for each person. *Id.* This calculation yielded a total of 7,546 workweeks for the class members who submitted claim forms. *Id.*

After determining the number of each class member's workweeks relative to the class as a whole, each class member's percentage of their share of the total workweeks was multiplied by the net settlement fund available for the initial distribution to the class ($2,628,473.00) to yield each class member's settlement share. *See Id.* at p. 4 ¶ 14; *see also* Pl's Summary of Settlement Funds, *attached as* Exhibit 3-B. This formula of distributing the funds based on the number of workweeks is fair and reasonable, as nearly all drivers earned the same salary and all reported working similar shifts schedules—closely approximating their relative share of damages for overtime if they were to succeed at trial. *See Thomson Decl*, (Ex. 3 at p. 4 ¶ 13).

To ensure that class members receive a fair opportunity to receive their full share of the settlement, there will be two rounds of checks paid to the participating class members. There will be an initial distribution of the majority of the settlement funds ($2,628,473.00) to participating class members. A reserve fund in the amount of $114,076.82[8] will be held "in reserve" from the initial distribution to address any disputes regarding calculation of settlement shares or if the parties determine that there is good cause to accept a late claim form from a participating class member. Any unused funds remaining in the reserve fund after 75 days will be distributed to the entire group of participating class members on a *pro rata* basis via a second round of distributions.

---

[8] After the reserve fund was initially set at $100,000.00, Class Counsel was able to reduce the costs of the settlement administrator, the $14,076.82 in savings was added to the reserve fund for distribution to the class.

**IV.    FINAL CLASS CERTIFICATION UNDER RULE 23 IS APPROPRIATE**

Plaintiff seeks final certification of the following settlement class:[9]

> all current and former Truck Drivers who worked for Defendant, who at any time were based in Jal, New Mexico or Loving, New Mexico, or who performed more than 50% of their work hours in New Mexico, and who worked over forty (40) hours in at least one week in New Mexico within the three (3) years preceding October 4, 2019 and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty hours.

To obtain class certification for settlement purposes, Plaintiff must satisfy the requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, Rule 23(b)(3) contains an additional two requirements: (5) common questions of law or fact must predominate over any questions affecting only individual members; and (6) a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. *See generally Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188-89 (10th Cir. 2002); *McClintock v. Continuum Producer Servs., LLC*, No. CIV-17-259-JAG, 2020 U.S. Dist. LEXIS 100677, at *2 (E.D. Okla. 2020); *see also, Gradie v. C.R. Eng., Inc.*, 2020 U.S. Dist. LEXIS 218287, *23, 2020 WL 6827783 (D. Utah November 20, 2020) ("Because the Rule 23 class is being certified here for settlement purposes only, the Court need not . . . address the manageability requirement of Rule 23(b)(3)." citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). As discussed below, Plaintiff satisfies each of the requirements for certification of the Rule 23 class for settlement purposes.

**A.    Numerosity**

Numerosity exists where the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Tenth Circuit, the Court has "wide latitude" in

---

[9] The original class definition placed a cap on the total number of class members at 402 persons. *See Prelim App. Order,* [Doc. 46 at p. 2]. However, there are more than 402 persons who fit the substantive conditions of the class definition. Because the settlement was intended to encompass the claims of all persons fitting the class definition, the parties agreed to strike the 402-person cap from the class definition.

determining whether the numerosity requirement has been met. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citation omitted); *see also, Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 669 (D.N.M. 2015) ("plaintiffs may establish that joinder would be impracticable with as few as fifty members.") (citations omitted); *Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, 2020 U.S. Dist. LEXIS 98628, at *16 (D.N.M. 2020) (finding numerosity requirement satisfied where defendants employed 150 putative class members within the relevant class period); *McCown v. Heidler*, 527 F.2d 204 (10th Cir. 1975) (262 class members). Here, the numerosity requirement is easily satisfied with 407 participating class members.

**B.    Commonality**

Commonality exists where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is not a demanding standard, as it "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims." *Haddock v. Nationwide Financial Services, Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009) (quotation omitted). "For a common question of law to exist, the putative class must share a discrete legal question of some kind. Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Hauff v. Petterson*, No. 1:09-CV-00639-PJK-DJ, 2009 WL 4782732, at *5 (D.N.M. 2009) (internal quotation omitted). "[D]iffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quoting *Colo. Cross-Disability Coal. V. Abercrombie & Fitch*, 765 F.3d 1205, 1216 (10th Cir. 2014)).

Indeed, in this case, the determination of whether Plaintiff and the Class Members are entitled to overtime under the New Mexico Minimum Wage Act is based on a central legal question applicable to all Class Members—whether the FAAAA or Dormant Commerce Clause preempts

the NMMWA such that CIG would be relieved of paying overtime pursuant to New Mexico state law. To be sure, there is no dispute that all class members were not paid overtime after forty (40) hours in a workweek and it is undisputed that the NMMWA does not contain an exemption from overtime applicable to truck drivers. Therefore, the only question is whether the FAAAA or Dormant Commerce Clause preempts the NMMWA such that CIG would be relieved of its obligation to pay overtime pursuant to the New Mexico state law. *In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014) (commonality requirement met even when damages are diverse).

**C.    Typicality**

"Concerning typicality, the named plaintiff's claim must be 'typical of the claim[] ... of the class.'" *Peak Pressure Control, L.L.C.*, 2020 U.S. Dist. LEXIS 98628, at *25 (quoting Fed. R. Civ. P. 23(a)(3)). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory."*Menocal*, 882 F.3d at 914 (quoting *Colo. Cross Disability Coal.*, 765 F.3d at 1216); *Jacob*, 289 F.R.D. 408 at 416 ("Courts tend to interpret typicality as requiring that the class members' claims 'arise[ ] from the same course of events,' meaning 'each class member [must] make[ ] similar legal arguments to prove the defendant's liability.'") (quoting *Marisol*, 126 F.3d at 376). When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims. *See generally Id.*

Here, Named Plaintiff worked as a truck driver for CIG in New Mexico and was not compensated at a rate of one and one-half his regular rate of pay for hours worked over forty in each workweek. Plaintiff seeks relief for the same injury (i.e., unpaid overtime) based on the same underlying facts (i.e., CIG's failure to pay overtime to its truck drivers in accordance with the NMMWA). The factual underpinnings of Plaintiff's claims for overtime under the NMMWA are

typical of the class—truck drivers who were not paid overtime in accordance with the NMMWA.

**D.    Adequacy**

The prerequisite stated in Rule 23(a)(4) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determination of adequacy typically "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 60 (2d Cir. 2000). Here, the Named Plaintiff has suffered the same harm suffered by all class members, and Named Plaintiff seeks relief on behalf of the entire class. Named Plaintiff, along with a few of the putative class members, have assisted Class Counsel in advancing this litigation on behalf of the entire class. Named Plaintiff does not have any individual interests that conflict with that of the putative class members.

As for the adequacy of class counsel, Lichten & Liss-Riordan, P.C. has extensive experience in class action overtime litigation. *See Lichten Decl*, (Ex. 2 at p. 1-3 ¶¶ 3-6). *See e.g., Scovil v. FedEx Ground Package Sys.*, 886 F. Supp. 2d 45, 48 (D. Me., Aug. 13, 2012) (finding adequacy of class counsel and noting that Attorney Lichten "has extensive experience in class action litigation [and] employment litigation[.]"). In addition, counsel at Herrmann Law, PLLC have extensive experience representing plaintiffs in wage and hour litigation in federal courts across the country. *See Herrmann Decl*, (Ex. 1 at pp. 1-2 ¶¶ 2-3). All counsel have dedicated significant time and resources to advancing this litigation on behalf of the class, and all are adequate class counsel. *See Id.* at pp. 4-6 ¶¶ 14-20; *Lichten Decl*, (Ex. 2 at pp. 4-5 ¶¶ 8-12).

**E.    Predominance**

"Rule 23(b)(3) ... requires the party seeking certification to show that 'questions of law or fact common to class members predominate over any questions affecting only individual members'

and that class treatment would be superior to individual litigation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)); *see Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977) ("The predominance requirement calls only for predominance, not exclusivity, of common questions.").

Here, the overtime claims rise or fall based on a purely legal issue—whether the FAAAA preempts the NMMWA or whether the NMMWA violates the dormant commerce clause. These issues, which are both purely legal determinations, are resolved without regard to the individual circumstances of Plaintiff or the Class Members. Though a single formula for classwide measurement of damages is not necessary, here, the classwide damages are capable of determination based on a single formula. *See supra* Section III. B; *see also In re Deepwater Horizon*, 739 F.3d at 818 (Predominance under Rule 23(b)(3) does not require a formula for classwide measurement of damages.) In addition, common issues predominate because the determination of liability is determined without regard to the individual circumstances of the class.

## F.    Superiority

Rule 23's "superiority" requirement is met where class treatment would ensure "efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 479 (E.D.N.Y.2001). Class treatment is far more efficient and superior because a central question exists that is common to all class members—whether the NMMWA is preempted. Once that question is resolved, either the lawsuit is over, or there are damages to be calculated. Therefore, class treatment is more efficient and superior because the central legal question can be resolved in one legal proceeding on a class wide basis.

In conclusion, Plaintiff satisfies each of the requirements under Rule 23 to certify the

Class for settlement purposes.[10] Therefore, Plaintiff respectfully requests this Court to enter a final order certifying the Class for settlement purposes.

## V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND MEETS ALL CRITERIA FOR FINAL APPROVAL

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. During final approval, the court must determine whether the settlement is fair, reasonable, and adequate. *See Nuclear Pharmacy, Inc.*, 741 F.2d at 324; Fed. R. Civ. P. 23(e). The court should look to Rule 23(e)(2)'s newly-minted approval factors. Rule 23(e)(2) provides that the court may approve a proposed class action settlement "only on finding that it is fair, reasonable, and adequate" and after considering whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;
>>
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Courts in the Tenth Circuit also look at the four *Rutter* factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate

---

[10] As stated above, because Plaintiff is requesting to certify a Rule 23 for settlement purposes only, the Court need not address the manageability requirement of Rule 23(b)(3).

recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993).

The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). With regard to class action settlements, courts "consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Oppenlander, supra*, 64 F.R.D. at 624. Moreover, courts "have consistently refused to substitute their business judgment for that of counsel . . ." *Id.*; see also *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 289 (D. Colo. 1997). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 U.S. Dist. LEXIS 188753, at *44 (S.D. Miss. 2016)(citation omitted).

Here, the settlement was reached through arm's-length negotiations conducted as part of a mediation before a highly experienced mediator of wage and hour cases. *See Herrmann Decl*, (Ex. 1 at p. 2 ¶ 4). The settlement was negotiated by experienced counsel for the Class and represented by adequate class representatives, who protected the interests of the Class Members. There were complex legal and factual issues that placed the ultimate outcome of this litigation in doubt. *See Id.* Ex. 1 at pp. 2-3 ¶¶ 7-8. As set forth below, the facts and circumstances compel the conclusion that the settlement satisfies the standard for approval.

**A.    The Settlement Satisfies the Rule 23 Test for Fairness**

**1.    Rule 23(e)(2)(A): <u>The class representative and class counsel have adequately represented the class.</u>**

The first factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Here, Class Counsel engaged in substantial discovery prior to moving for summary judgment and obtained and analyzed additional class-wide electronic data prior to mediation and reaching a settlement. *See Id.* Ex. 1 at pp. 2-3 ¶¶ 5-7. The substantial discovery exchanged and the briefing summited on the cross-motions for summary judgment provided class counsel with "an adequate appreciation of the merits of the case before negotiating," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citations omitted), and enabled them to "ferret out facts helpful to the prosecution of the suit," *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citation omitted); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, throughout this proceeding Class Counsel effectively represented the class members' interests, have dedicated significant time, and put significant effort into prosecuting this action on the class members' behalf including, filing and submitting competing briefs on the issues raised the parties' cross motions for summary judgment, responding to written discovery, analyzing voluminous discovery data, investigating the experiences of absent class members, attending a full-day mediation, and engaging in protracted settlement negotiations. *See Herrmann Decl*, (Ex. 1 at pp. 2-3; 4-6 ¶¶ 5-7; 12; 14-20); *Lichten Decl*, (Ex. 2 at pp. 4-5 ¶¶ 8-12).  In addition, Plaintiff has likewise dedicated significant time and effort into this litigation by reviewing discovery,

assisting in preparation of declarations supporting summary judgment, and providing class counsel with invaluable guidance through this litigation and the negotiation of the proposed settlement. *See Herrmann Decl*, (Ex. 1 at pp. 6-7 ¶¶ 23-25).

Class counsel have substantial experience litigating wage and hour cases. *See Id.* at p. 1 ¶¶ 2-3; *Lichten Decl*, (Ex. 2 at pp. 1-3 ¶¶ 3-6). Specifically, Attorney Lichten has litigated a substantial number of cases involving assertions that a state law overtime claim was preempted by the FAAAA—Defendant's primary defense in this case. Class counsel were able to draw on their prior experience to achieve a favorable settlement.

## 2.     Rule 23(e)(2)(B): <u>The proposal was negotiated at arm's length.</u>

The second factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 (Advisory Committee Notes). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011); *see also Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (where "a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.")

Here, the settlement was negotiated at arm's-length after prolonged settlement negotiations, including a full-day mediation. *See Herrmann Decl*, (Ex. 1 at p. 2 ¶ 4). While the parties were initially unsuccessful on the day of mediation, Mr. Lemons continued facilitating settlement negotiations between the parties in the days and weeks following mediation— ultimately, these sustained efforts resulted in an agreement to settle. *See Herrmann Decl*, (Ex. 1 at pp. 2-3 ¶¶ 7-8); s*ee also Sandoval v. Tharaldson Employee Mgmt., Inc*., 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc*., 2009 WL

3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). In sum, the arm's-length nature of the settlement negotiations is reflected in both the process by which the settlement was reached and the resulting settlement terms.

### 3.    Rule 23(e)(2)(C)(i)–(iv)

#### i.    Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.

The third factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 (Advisory Committee Notes). "Often, courts may need to forecast the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id*.[11] This factor is satisfied.

First, the settlement provides substantial monetary payments to the class members. *See Herrmann Decl*, (Ex. 1 at p. 3 ¶¶ 8-9). Here, class members will receive a pro rata share of the settlement based upon the number of workweeks where class members were assigned to a terminal in New Mexico or spent more than 50% of their time driving in New Mexico. *See Thomson Decl*, (Ex. 3 at pp. 3-4 ¶ 12).  Because the settlement represents a compromise and accounts for risk of ongoing litigation, class members are admittedly not receiving their full amount of damages had

---

[11]    *See also Grady v. de Ville Motor Hotel, Inc*., 415 F.2d 449, 451 (10th Cir. 1969) ("the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial. . . ."); *Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum"); *accord Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

they succeeded in all aspects of their claims and been awarded damages at trial. However, courts have recognized that class settlements provide adequate relief where they provide some meaningful percentage of the potential damages, accounting of the risks of continued litigation. *See generally Gonzalez v. BMC W., LLC*, 2018 WL 6318832, at *7 (C.D. Cal. Nov. 19, 2018) ("[e]ven a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case"), citing Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015). Here, prior to mediation, Class Counsel reviewed substantial classwide data and calculated that the total potential damages for the class had they succeeded on all aspects of their case was roughly $6.3 million dollars. The $4,175,000 settlement fund represents more than 65% of this potential recovery, which far exceeds the percentage achieved in similar wage and hour settlements that have been granted court approval. See Shaw v. Interthinx, Inc., 2015 WL 1867861, at *3 (D. Colo. Apr. 22, 2015) (approving class settlement in overtime case where the net settlement amount constituted "about forty (40) percent of the damages potentially recoverable").

Second, the settlement enables class members to avoid real litigation risks. *See Herrmann Decl*, (Ex. 1 at pp. 2-3 ¶¶ 7-9); *Lichten Decl*, (Ex. 2 at p. 4 ¶¶ 8-9). Defendant has contested the claims in this case, including filing a motion for summary judgment seeking to dismiss all claims as a matter of law based on Defendant's contention that Plaintiff's claims are preempted by the FAAAA and violate the Dormant Commerce Clause. Defendant also disputes the calculation of the number of overtime hours actually worked by Plaintiff and the Class Members. Although Defendant does not contest class certification for purposes of settlement only, Defendant was prepared to challenge whether Plaintiff could ultimately obtain class certification.

Finally, the settlement enables the class members to avoid significant delay. *See Herrmann*

*Decl*, (Ex. 1 at pp. 2-3 ¶ 7). The parties' cross-motions for summary judgment remain pending before the Court. In addition, Plaintiff had not yet filed a motion for class certification. Even if the pending motions for summary judgment and any motion for class certification were resolved in Plaintiff's favor, there would still be additional discovery, additional summary judgment briefing on the issue of damages, and eventually trial. An appeal of any unfavorable decision or judgment is also likely.

In any event, "[i]t has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'" *Oppenlander*, 64 F.R.D. at 624. Here, the outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potential recovery at stake, the value provided for in the settlement outweighs the mere possibility of future relief after protracted and expensive litigation. *See Herrmann Decl*, (Ex. 1 at pp. 2-3 ¶¶ 7-9).

  ii. **Rule 23(e)(2)(C)(ii): <u>The relief provided for the class is adequate, taking into account the effectiveness of any the proposed method of distributing relief to the class including the method of processing class-member claims if required.</u>**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 (Advisory Committee Notes). This factor is satisfied because the notice process adequately provided notice to the class. In addition, class members were given the option to opt-out—and 3 class members exercised their option—by simply communicating their wish to exclude themselves from the settlement class.

On November 13, 2020, following the Court's Order granting preliminary approval of the proposed class action settlement in this matter, Class Counsel disseminated the Court-approved Notice of Class Action Settlement, the Claim Form, and a return-envelope to 488 individuals that Cass Counsel identified from data provided by Defendant who were class members in this Action.

After mailing the initial notice documents, Class Counsel received 56 notices returned as undeliverable. Through public records databases, Class Counsel located updated addresses for 23 of the class members whose notices were returned and who did not submit their claims. Class Counsel promptly re-mailed the Court-approved notice documents to the new addresses for those individuals. As of March 1, 2021, 10 of those 23 class members had submitted claims. On November 13, 2020, in addition to mailing the notices, Class Counsel also sent an email notice to 488 class members for whom Defendant had provided a last-known email address.

On December 28, 2020, Class Counsel sent an email reminder notice to all class members who had not yet submitted a claim form and for whom Defendant had provided a last-known email address. On January 8, 2021, a reminder mailing was sent via First Class Mail to all class members who had not yet submitted a claim form.

In response to the notice mailings and emails, claim forms were received from 17 individuals who were not on the original class list. Class Counsel undertook investigation by interviewing these individuals, gathering documents from these individuals related to their work for Defendant, and speaking with counsel for Defendant to obtain additional information. Following this investigation, Class Counsel determined that nine of these individuals should properly be included in the Class, and the others did not meet the class definition for one reason or another (either based on the time period that they worked or the location of their work for Defendant). To date, 407 claim forms have been received from class members who are participating in this Action, producing a claim rate of 82 percent. This claims rate is substantial for wage and hour litigation and demonstrates that Class Counsel implemented an effective notice process, that the Court-approved notice was adequate, and that class members have responded positively to the settlement. *See generally* <u>*Brandenburg v. Cousin Vinny's Pizza, LLC*</u>, 2019 WL

6310376, at *3 (S.D. Ohio Nov. 25, 2019) (approving Rule 23 settlement on behalf of delivery drivers in wage case and noting that the claims rate was "above average at over one third of the class joining the case"). Attached as Exhibit 3-B is a list (by class member ID number) of each class member who has submitted a claim form, including their projected settlement share at the current level of participation.

### iii. Rule 23(e)(2)(C)(iii): The relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including the timing of payment.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23 (Advisory Committee Notes). Here, Class Counsel seek attorneys' fees based on a percentage of the fund in the amount of $1,391,527.00, representing 1/3 of the common settlement fund. *See Herrmann Decl*, (Ex. 1 at p. 4 ¶ 13). Class Counsel's fee of 1/3 is well within the range approved by courts in the Tenth Circuit.[12] Class Counsel also seek recovery of costs incurred in pursuing this litigation

---

[12] *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis."); *Cook v. Rockwell Int'l Corp.*, 2017 U.S. Dist. LEXIS 181814, 2017 WL 5076498, at *1-2 (D. Colo. Apr. 28, 2017) (explaining forty percent fee falls within acceptable range in Tenth Circuit); *Shaw v. Interthinx, Inc.*, 2015 U.S. Dist. LEXIS 52783, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (finding 1/3 of $6 million dollar fund, or $2 million, in wage and hour case to be "well within the percentage range approved in similar cases") (collecting cases); *Campbell v. C.R. England, Inc.*, 2015 U.S. Dist. LEXIS 134235, 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015) (awarding 1/3 of $5,000 fund in FLSA collective action). *Blanco v. Xtreme Drilling & Coil Services, Inc.*, 2020 U.S. Dist. LEXIS 126155, 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"); *Peck v. Encana Oil & Gas, Inc.*, 2018 U.S. Dist. LEXIS 28630, 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (finding 37.5% fee in wage and hour hybrid action to be "well within the range for a contingent fee award") (collecting cases); *Farley v. Family Dollar Stores, Inc.*, 2014 U.S. Dist. LEXIS 154059, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014) (30.3% fee of $2.3 million fund in wage and hour hybrid action); *Whittington v. Taco Bell of Am., Inc.*, 2013 U.S. Dist. LEXIS 161665, 2013 WL 6022972, at * 6 (D. Colo. Nov. 13, 2013) (explaining that the fees and costs of 39% of the fund were "within the normal range for a contingent fee award" in wage and hour hybrid class action); *Shaulis v. Falcon Subsidiary LLC*, 2018 U.S. Dist. LEXIS 164775, 2018 WL 4620388, at *2 (D. Colo. Sept. 26, 2018) (finding 1/3 of common fund to be reasonable because the award was similar to fee awards in "similar wage and hour cases in this District"); *Williams v. Sprint/United Mgmt. Co.*, 2007 U.S. Dist. LEXIS 67368, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2017) (awarding 35% fee in employment class action); 4 *Newberg On Class Actions* § 14:6 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Enegren v. KC Lodge Ventures LLC*, 2019 U.S. Dist. LEXIS 177192, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019) (awarding 40% of fund in wage collective action).

in the amount $8,350.18 plus $7,573 paid to Atticus Settlement, LLC to administer the settlement.

### a. Attorneys' Fees should be awarded based on the Percentage of Recovery.

Class Counsel seek an award of attorneys' fees based on the percentage of the settlement obtained, which—in the Tenth Circuit—is the preferred and appropriate method for awarding attorneys' fees. The Tenth Circuit has expressed a preference for determining the reasonableness of a fee award in a common fund case utilizing the percentage of fund method. *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. Feb. 3, 1988). In addition, district courts in New Mexico routinely approve attorneys' fees based on a percentage of the recovery, without a lodestar cross-check. *See Candelaria v. Health Care Serv. Corp.*, No. 2:17-cv-404-KG-SMV, 2020 U.S. Dist. LEXIS 202390, at *15-16 (D.N.M. 2020); *Barela v. Citi Corp.*, No. 1:11-cv-506-KG-GBW, ECF 93 (D.N.M Sept. 15, 2014) (awarding percentage of fund in wage and hour case without lodestar cross check).[13] District courts within the Tenth Circuit but outside of New Mexico agree. *Chieftain Royalty Co. v. Marathon Oil Co.*, 2019 U.S. Dist. LEXIS 226386, 2019 WL 7758915, at *9 (E.D. Okla. Mar. 8, 2019) (awarding 40% fee without lodestar cross check, explaining that the "lodestar method and lodestar cross-checks are a wasteful use of resources and are disfavored by the Tenth Circuit.") (collecting cases).

### b. The Requested Fee is Reasonable

Under the percentage-of-recovery method in the Tenth Circuit, Class Counsels' requested

---

[13] *See also Ramah Navajo v. Jewell*, 167 F. Supp. 3d at 1241-42 (D.N.M. 2016); *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1097 (D.N.M. 1999); *Ramah Navajo Chapter* v. *Kempthorne*, Case No. CIV 90-0957 LH/KBM, 2008 U.S. Dist. LEXIS 143974, 2008 WL 11342943, at *5 (D.N.M. Aug. 27, 2008) (same); *Robles v. Brake Masters Sys., Inc.*, Case No. CIV 10-0135 JB/WPL, 2011 U.S. Dist. LEXIS 14432, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011); *Acevedo v. Sw. Airlines Co.*, 1:16-CV-00024-MV-LF, 2019 U.S. Dist. LEXIS 213691, 2019 WL 6712298, at *1 (D.N.M. Dec. 10, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 4571, 2020 WL 85132 (D.N.M. 2020); *Daye v. Cmty. Fin. Serv. Ctrs., LLC*, 1:14-cv-759-KK-KBM, ECF 195 (D.N.M. August 15, 2019); *J.O. v. Dorsey, et al.*, No. 1:11-cv-254-MCA-GBW, ECF 157 (D.N.M. Nov. 19, 2014); *Willett v. Redflex Traffic Systems, Inc.*, No. 1:13-cv-1241-JCH-LAM (D.N.M. Nov. 24, 2016); *Dejolie v. T&R Market, Inc.*, No. 1:17-cv-733-KK-SCY (D.N.M. Dec. 10, 2018); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-130-PJK-GBW (D.N.M. Feb. 11, 2014), ECF 65; *Yazzie v. Gurley Motor Co.*, No. 1:14-cv-555-JAP-SCY, ECF 196 (D.N.M. Oct. 28, 2016).

fee of 1/3 is well within the range of fees that are consistently approved by courts in the Tenth

Circuit.[14] Here, the work performed by Class Counsel in this litigation and the results Class

Counsel obtained further support the requested fee of 1/3, which is reasonable and well within the

range of fees that are commonly awarded in similar litigation. *See Herrmann Decl*, (Ex. 1 at p. 4

¶ 13).   Moreover, Class Counsel at Herrmann Law and Lichten & Liss-Riordan specialize in

representing low wage workers, who cannot afford to pay out-of-pocket for counsel. Thus, Class

Counsel engage almost exclusively in contingency fee practice, and the reality is that for every

successful case, there are always others that will be vigorously pursued for years only to result in

no recovery for the class or counsel.   Plaintiff-side contingency practice on behalf of low wage

workers is made possible by a system by which counsel can obtain contingency fee awards for

those cases that are successful. In addition, Class Counsel seek reimbursement of all out-of-pocket

litigation expenses and costs incurred in the amount of $8,350.18, which includes costs associated

---

[14] *See, e.g., Candelaria v. Health Care Serv. Corp.*, No. 2:17-cv-404-KG-SMV, 2020 U.S. Dist. LEXIS 207337, at *9 (D.N.M. 2020) (approving 35% fee to class counsel without lodestar cross check); *Barela v. Citi Corp.*, No. 1:11-cv-506-KG-GBW, ECF 93 (D.N.M. Sept. 15, 2014) (awarding percentage of fund in hybrid FLSA and Rule 23 wage and hour case) (Gonzales, J.); *Acevedo*, 2019 U.S. Dist. LEXIS 213691, 2019 WL 6712298, at *1 (approving 33% award without lodestar analysis or lodestar crosscheck in wage and hour hybrid action), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 4571, 2020 WL 85132; *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d at 1097 (fee awards "in common fund cases should be evaluated using the percentage of fund method without a lodestar analysis."); *Whittington*, 2013 U.S. Dist. LEXIS 161665, 2013 WL 6022972, at *6 (fees and costs of 39% in wage and hour case without lodestar cross check); *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 U.S. Dist. LEXIS 108821, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015) (citations omitted) (noting that fee awards in common fund cases have been approved at as high as 58%); *Fankhouser*, 2012 U.S. Dist. LEXIS 147197, 2012 WL 4867715, *3 (awarding 36% without lodestar cross check); *Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*, 2015 Okla. Dist. LEXIS 2, 2015 WL 5794008, at *3 (Okla. Dist. Ct. Beaver Cty. July 2, 2015) (awarding 40% fee of $119 million common fund); *McClintock v. Continuum Producer Servs., L.L.C.*, 2020 U.S. Dist. LEXIS 97746, *20 (E.D. Okla. June 4, 2020) (awarding a 33 ⅓% fee in class action settlement); *Chieftain Royalty Co. v. Laredo Petro., Inc.*, No. CIV-12-1319, 2015 U.S. Dist. LEXIS 62450 (W.D. Okla. May 13, 2015) (Docket No. 52 at 5) (the "*Laredo* Fee Order") ("Class Counsel's request of forty percent (40%) of the $6,651,997.95 Settlement Amount is within the acceptable range of attorneys' fees approved by Oklahoma Courts as being fair and reasonable in contingent fee class action litigation ..."); *Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, Dkt. No. 182, 2013 U.S. Dist. LEXIS 195004 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement) (the "*QEP* Fee Order"); *Reirdon v. XTO Energy Inc.*, No. 6:16-cv-00087-KEW, 2018 U.S. Dist. LEXIS 225941, at *24 (E.D. Okla. 2018) (approving a 40% fee in a class action settlement); *Droegemueller*, 2009 U.S. Dist. LEXIS 123875, 2009 WL 961539, *4 (awarding 33 1/3% without a lodestar cross check); *Lewis*, 2006 U.S. Dist. LEXIS 87681, 2006 WL 3505851, *2 (awarding 33 1/3% without calculating lodestar).

with administering the settlement, court fees, electronic research, postage and courier fees, and fees of the private mediator. *See Id.* at p. 6 ¶ 20; *Lichten Decl*, (Ex. 2 at pp. 4-5 ¶ 12). The out-of-pocket litigation expenses and costs incurred by Class Counsel are appropriate and are recoverable. *See Candelaria*, 2020 U.S. Dist. LEXIS 207337, at *10 (in addition to awarding the cost of hiring a settlement administrator, court awarded class counsel all "actual out-of-pocket litigation expenses and costs incurred in prosecuting this case, including costs for court fees, electronic research, postage and courier fees, photocopies, and the fees of the private mediator[.]"). Finally, Class Counsel seek approval of the cost of engaging Atticus Settlement, LLC in the amount of $7,573.00 to administer the settlement.

### iv.     Rule 23(e)(2)(C)(iv): The relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(3).

Under this factor, the parties are required to "file a statement identifying any agreement made in connection with the proposal." Here, the only agreement in this matter is the Settlement Agreement, which is on file with the Court, [Doc. 44-1]. Therefore, this factor is satisfied.

### 4.     Rule 23(e)(2)(D): The settlement treats class members equitably relative to each other.

The final factor seeks to prevent the "inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23 (Advisory Committee Notes). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id*. Here, all class members asserted claims for unpaid overtime wages under the NMMWA, and therefore, settlement shares for each class member will be derived using an identical formula applied to all class members. Therefore, because there is only a single claim at issue and the settlement shares will be calculated using an identical formula, all class members are treated equitably relative to each other.

In addition, the Settlement Agreement provides for an incentive payment of $25,000 to George Montgomery, the Named Plaintiff. Courts routinely recognize the importance of incentive awards in wage cases of this nature, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005).[15]

The requested incentive payment is in the range of incentive payments approved in similar wage and hour cases. *See, e.g., Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. 2015) (approving incentive award of $20,000.00); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *16-17 (N.D. Cal. 2007) (district court awarded each of the class representatives in an overtime class action a service award of $25,000.00); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (approving a $50,000 service award); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (award of $50,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards

---

[15] *See also UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. App'x. 232, 235 (10th Cir. Sept. 11, 2009) "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.") (unpublished)(internal quotes and citation omitted); *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 U.S. Dist. LEXIS 144366, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (unpublished) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.") (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, 2009 U.S. Dist. LEXIS 82522, 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (unpublished) ("The practice of granting incentive awards to Class Representatives is common and widespread in class litigation.") (citations omitted).

of $55,000, and three incentive awards of $ 35,000).

**B.    The Settlement also Satisfies the Tenth Circuit's *Rutter* Factors.**

In the Tenth Circuit, courts likewise consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188; *see also Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (applying *Rutter* factors following the 2018 amendments to Fed. R. Civ. P. 23(e)).

First, "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Settlement was the product of real, arms-length negotiations between experienced counsel who are well-versed in the legal and factual issues presented by this case. Plaintiff was represented by competent counsel who vigorously and professionally conducted the litigation, and there is no indication that any Party was unfairly pressured or coerced into agreeing to the Settlement. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137-38 (D. Colo. 2009).

Second, as discussed above, serious questions of law and fact regarding the merits of Plaintiffs' claims and Defendant's defenses place the ultimate outcome of the litigation in doubt. Based on the complexity of the case, the novelty of the legal issues, the substantial risks and uncertainty of the outcome on both liability and certification issues, as well as the need to establish damages, Class Counsel believe that the settlement is an excellent one and is fair and in the best interests of the Class Members. Although it is not the role of the Court at this stage of the litigation to evaluate the merits, "it is clear that the parties could reasonably conclude that there are serious

questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. at 693-94.

Third, the value of immediate recovery far outweighs the possibility of future relief after protracted and expensive litigation. Under the settlement, Defendant agrees to fund the non-reversionary Gross Settlement Amount of $4,175,000.00. There are questions of law and fact that substantially impact the ultimate outcome of this matter into question. Primarily, the outcome of the federal preemption issued raised by Defendant could substantially impact the outcome of the litigation and result in no recovery at all for the Class Members. The outcome of protracted litigation is thus far from certain, and Plaintiff faces substantial risks of not prevailing on the claims, and substantial risk of even being able to proceed with any class-wide claims. Further, any resolution of the liability questions and class certification issues is likely years away. The parties have not yet litigated class certification, and Defendant would likely seek an immediate appeal of any decision contrary to Defendant's position on class certification—further delaying the outcome of the litigation. *See* Fed. R. Civ. P. 23(f). Here, the value of immediate recovery is substantial, and the possibility of future recovery for the Class is by no means likely, let alone guaranteed.

Even if Plaintiff ultimately defeated federal preemption and any other argument or summary judgment motions by Defendant and Plaintiff prevailed on class certification and at trial, an appeal by Defendant of any adverse ruling or judgment is likely. An appeal by Defendant following a trial would have required many more years to resolve, assuming the judgment was affirmed. If the judgment was not affirmed in total, then the case could have dragged on for years after the appeal. The benefits of a guaranteed recovery today outweigh an uncertain result several years in the future.

"By contrast, the proposed [Settlement] provides the class with substantial, guaranteed

relief." *Lucas*, 234 F.R.D. at 694.; see also *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *37 (W.D. Okla. 2008) (finding that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted"). "An evaluation of the benefits of the Settlement also must be tempered by the recognition that any compromise involves concessions on the part of the Parties. Indeed, the very essence of a [Settlement] is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Acevedo,* 2019 U.S. Dist. LEXIS, citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Thus, this factor also weighs in favor of granting approval.

Fourth, the parties consider the settlement to be fair and reasonable, and not a single Class Member objected to the Settlement. *See Rutter*, 314 F.3d at 1188. As discussed above, Class Counsel are experienced and knowledgeable about the claims, remedies, and defenses at issue in this litigation. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. at 695; *McNeely,* 2008 U.S. Dist. LEXIS 86741, at *37-*38 (same). "Here, the parties' counsel—among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions— unanimously support this settlement." *Lucas*, 234 F.R.D. at 695. As such, this factor further supports granting approval.

In sum, the terms of the settlement are in all respects fair, adequate, and reasonable. Therefore, Plaintiff respectfully requests the Court to enter an order granting final approval of the Settlement Agreement.

## VI.    CONCLUSION & PRAYER

Accordingly, Plaintiff respectfully requests this Court to issue an order: 1) granting final approval of the Settlement Agreement; 2) granting final certification of the Rule 23 Class for purposes of settlement; 3) approving of the service award to George Montgomery; 4) approving class counsel's request for attorneys' fees and costs; and 5) entering final judgment in this matter, dismissing this action with prejudice.

Respectfully submitted,


By: /s/ Drew N. Herrmann
          **HERRMANN LAW, PLLC**
          Drew N. Herrmann
          N.M. Federal Bar No. 19-201
          drew@herrmannlaw.com
          Pamela G. Herrmann
          N.M. Federal Bar No. 19-215
          pamela@herrmannlaw.com
          801 Cherry St., Suite 2365
          Fort Worth, TX 76102
          Phone: 817-479-9229

    -AND-

          **LICHTEN & LISS-RIORDAN, P.C.**
          Harold L. Lichten, *pro hac vice*
          Massachusetts BBO # 549689
          Matthew Thomson, *pro hac vice*
          Massachusetts BBO # 682745
          729 Boylston Street, Suite 2000
          Boston, MA 02116
          Tel. 617-994-5800
          Fax: 617-994-5801
          hlichten@llrlaw.com
          mthomson@llrlaw.com

          ATTORNEYS FOR PLAINTIFF
          AND CLASS MEMBERS

<u>CERTIFICATE OF SERVICE</u>

I certify that on March 4, 2021 a true and correct copy of the above document will be filed and served via CM/ECF.

*/s/ Drew N. Herrmann*
Drew N. Herrmann