**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

GEORGE MONTGOMERY,

    Plaintiff,

v.                                                                                      Civ. No. 19-940 GJF

CONTINENTAL INTERMODAL
GROUP-TRUCKING LLC,

    Defendant.

**ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL**

Before the Court is Plaintiff's Unopposed Motion for Final Approval of a Rule 23 Class

Action Settlement [ECF 51] ("Motion"). The Court held an extensive final fairness hearing on

March 9, 2021 and conducted a telephone conference on March 29, 2021 to address outstanding

issues.[1] Having reviewed the submissions, including the Settlement Agreement [Doc. 44-1], and

having heard the arguments of counsel, the Court GRANTS the Motion for Final Approval. As set

forth in further detail below, the Court approves the parties' settlement of a Rule 23 Class Action

and issues this Order:  1) granting final approval of the Settlement Agreement; 2) granting final

certification of the Rule 23 Class for purposes of settlement; 3) approving Plaintiff's service award;

and 4) approving Class Counsel's amended request for attorneys' fees and costs.

**I.     SUMMARY OF THE LITIGATION**

The parties have fully set forth respective summaries of the relevant facts in the motions

for summary judgment and responses thereto. *See Pls Mot Summ. J.,* [Doc 26]; *Def Mot Summ. J.,*

[Doc 28], *Pls Resp to Def Mot Summ. J.,* [Doc 35]; and *Def Resp to Pls Mot Summ. J.,* [Doc 31].

On October 4, 2019, George Montgomery ("Plaintiff") filed this lawsuit on behalf of

---

[1] Due to the ongoing Covid-19 pandemic, the final fairness hearing was conducted remotely via video conference in accordance with the Court's standing Orders in effect at the time of the hearing.

1

himself and a class of similarly situated individuals to recover unpaid overtime wages and other damages under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, et seq. *See* [Doc 1]. Defendant filed its Answer on November 20, 2019. *See Answer,* [Doc 4]. On, January 14, 2020, the parties submitted a Discovery Plan [Doc 10] and the Court held a Rule 16 telephonic conference on January 22, 2020. *See Clerk's Minutes Rule 16 Conference,* [Doc 11]. In light of Defendant's desire to resolve potentially dispositive issues at an early stage in the litigation, the Court entered an Interim Order setting the deadlines for written discovery and filing dispositive motions. *Interim Order Setting Deadlines,* [Doc 12]. Thereafter, the parties engaged in written discovery in anticipation of filing cross-motions for summary judgment by the April 21, 2020 deadline.

On April 20, 2020, Plaintiff filed a motion for summary judgment [Doc 26]. On April 21, 2020, Defendant filed its motion for summary judgment [Doc 28]. Defendant responded to Plaintiff's motion on May 4, 2020 [Doc 31]. Plaintiff responded to Defendant's motion on May 8, 2020 [Doc 35]. Thereafter, in accordance with the parties' discussions with the Court during the April 28, 2020 telephonic conference (*Clerk's Minutes,* [Doc 29]), the parties advised the Court that they agreed to participate in private mediation, with a mediator to be jointly selected by the parties.  On May 22, 2020, the parties submitted an agreed motion to stay all deadlines including the completion of summary judgment briefing pending mediation. *See Joint Mot to Stay,* [Doc 40]. The Court granted the parties' agreed motion to stay all case deadlines and summary judgment briefing through August 6, 2020. *See Order Granting Stay,* [Doc 41].

During an August 6, 2020 status conference, the parties notified the Court that they had reached a settlement. *See Clerk's Minutes,* [Doc. 42]. On October 1, 2020, Plaintiff filed an Unopposed Motion for Preliminary Approval of Rule 23 Class Action Settlement. [Doc. 44]. The

Court granted preliminary approval of the settlement, approved the proposed notice to class members, and in accordance with Federal Rule of Civil Procedure 23, ordered Class Counsel to distribute the Court-approved notice of the class action settlement to the class. *See Order Prelim. Approval,* [Doc. 46 at pp 2-3]. Class Counsel disseminated the approved notice of settlement to the class. After notices were disseminated, no objections were filed by any class member and three (3) class members elected to opt out of the settlement.[2] Plaintiff then filed his Unopposed Motion for Final Approval [Doc. 51].

The parties attended a final fairness hearing on March 9, 2021.  At the parties' request, the Court granted an additional fourteen days for Defendant to undertake a further review of its records to ensure that all potential class members had received notice of the settlement.  After reviewing additional data, Defendant informed Class Counsel that it had identified an additional ten individuals whom it believed should have been included on the notice list.  After review, Class Counsel agreed that all ten individuals met the class definition, calculated their settlement shares to add up to $63,707.79, and agreed to reduce counsel's fee request by that amount so that inclusion of these additional class members would not decrease the value of the settlement shares of the other class members.[3]   Before the March 29, 2021 telephonic conference, Class Counsel provided these ten individuals with the Court-approved notice of settlement. All ten newly identified class members have submitted signed claim forms to receive their share of the settlement funds.  Class Counsel also submitted additional filings under seal

---

[2] The Class Members who opted out of the Settlement are: (1) Nathaniel Evans; (2) Marcus Hubbard; and (3) Juan Chavez. *See Notices of Filing Opt-Outs,* [Doc. 47] and [Doc. 48].  Represented by counsel unconnected to the instant case, Hubbard and Evans recently filed their own lawsuit against Defendant in this District. *See Marcus Hubbard and Nathaniel Evans v. Continental Intermodal Group – Trucking LLC*, 21cv86 SMV/GJF (D.N.M.).

[3] At the follow-up telephone conference, Plaintiff's counsel advised that another class member had independently submitted a claim form on or about March 19, 2021.  Plaintiff's counsel explained that the settlement share for this individual as well as those for the ten additional class members identified during Defendant's most recent record review totaled $63,707.79.

related to their billing records and addressing several other issues raised by the Court at the Final Fairness Hearing.

Having considered the parties' submissions and following discussion at the Final Fairness Hearing and subsequent telephonic conference, the Court now issues this order granting final approval of the parties' Rule 23 class action settlement.

## II.    FINAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

Having considered the submissions, evidence, and relevant legal authorities, this Court finds that the requested class meets the requirements for class certification under Fed R. Civ. P. 23.[4] Therefore, the Court certifies the following class under Rule 23 for settlement purposes:

> all current and former Truck Drivers who worked for Defendant, who at any time were based in Jal, New Mexico or Loving, New Mexico, or who performed more than 50% of their work hours in New Mexico, and who worked over forty (40) hours in at least one week in New Mexico within the three (3) years preceding October 4, 2019 and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty hours.

*See Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial of another law suit by another person asserting a claim related to the controversy settled."); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context." (quoting *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in

---

[4] With the exception of the manageability requirement of Rule 23(b)(3), which the Court need not address for purposes of settlement *See Gradie v. C.R. Eng., Inc.*, 2020 U.S. Dist. LEXIS 218287, *23, 2020 WL 6827783 (D. Utah, Nov. 20, 2020) ("Because the Rule 23 class is being certified here for settlement purposes only, the Court need not . . . address the manageability requirement of Rule 23(b)(3)." citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

class action suits, there is an overriding public interest in favor of settlement."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . .").

This Court finds that the class meets the applicable requirements for class action treatment under Federal Rule of Civil Procedure 23, namely:

1.  The Class Members are so numerous that joinder of all of them is impracticable;

2.  There are questions of law and fact common to the Class Members, which predominate over any individual questions;

3.  Plaintiff's claims are typical of the Class Members' claims;

4.  Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

5.  Class treatment of Plaintiff's claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

Having found that the class satisfies the requirements of Fed. R. Civ. P. 23, the Court certifies the class for settlement purposes.

### III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. During final approval, the court must determine whether the settlement is fair, reasonable, and adequate. See *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); Fed. R. Civ. P. 23(e). "The trial court must approve a settlement if it is fair, reasonable and adequate." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 U.S. Dist. LEXIS 188753, at *44 (S.D. Miss. 2016) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

2004)). Under Fed. R. Civ. P. 23(e)(2), a class action settlement may be approved after a finding

that it is fair, reasonable, and adequate and after considering whether:

> (A) the class representatives and class counsel have adequately
> represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into
> account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of
>> distributing relief to the class, including the method of
>> processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees,
>> including timing of payment;
>> (iv) any agreement required to be identified under Rule
>> 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each
> other.

Courts in the Tenth Circuit also examine the four *Rutter* factors: "(1) whether the proposed

settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist,

placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate

recovery outweighs the mere possibility of future relief after protracted and expensive litigation;

and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks

Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002) (citing *Gottlieb v. Wiles*, 11 F.3d

1004, 1014 (10th Cir. 1993); *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984)).

The Court finds that the Settlement was negotiated by experienced counsel for the Class

and represented by an adequate class representative, who protected the interests of the Class

Members. As highlighted in the cross-motions for summary judgment, there were complex legal

and factual issues that placed the ultimate outcome of this litigation in doubt. Where both sides

face significant uncertainty, the attendant risks favor settlement. *See In re Crocs, Inc. Sec. Litig.*,

306 F.R.D. 672, 691 (D. Colo. 2014). The Court further finds that the settlement is fair, reasonable, and adequate in view of the claims presented and the risks associated with litigation, and therefore meets the requirements for final approval.

**A.  The Settlement Satisfies the Rule 23 Test for Fairness**

      **1.  Rule 23(e)(2)(A): <u>The class representative and class counsel have adequately represented the class.</u>**

The first factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes").

Here, the substantial digital and documentary discovery exchanged by the parties and the briefing submitted on the cross-motions for summary judgment provided Class Counsel with "an adequate appreciation of the merits of the case before negotiating," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citations omitted), and enabled them to "ferret out facts helpful to the prosecution of the suit," *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citation omitted); *see, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (granting preliminary approval where, even in absence of formal discovery, parties had "ample information from which to weigh the strengths and weaknesses of their claims"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977) citing *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975)); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1214 (5th Cir. 1978), *cert. denied,* 439 U.S. 1115 (1979)).

Class Counsel at Herrmann Law, PLLC and Lichten & Liss-Riordan, P.C. have substantial experience litigating wage and hour cases. Class Counsel were able to draw on their prior experience in similar litigation to achieve a manifestly favorable settlement. The Court finds that Class Counsel adequately represented the class and achieved an excellent result for the class. In addition, the Court finds that the named Plaintiff, George Montgomery, has adequately represented the class.

### 2.   Rule 23(e)(2)(B): <u>The proposal was negotiated at arm's length.</u>

The second factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 (Advisory Committee Notes). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011);  *see also Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

Here, the settlement was negotiated at arm's length after prolonged settlement negotiations—including a full day mediation session with an experienced wage and hour mediator. *See Sandoval v. Tharaldson Employee Mgmt., Inc*., 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); accord *Wal-Mart Stores, Inc. v. Visa U.S.A*., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in

arm's-length negotiations between experienced, capable counsel after meaningful discovery."). In sum, the arm's-length nature of the settlement negotiations is reflected in both the process by which the settlement was reached and the resulting settlement terms.

    **3.  Rule 23(e)(2)(C)(i)–(iv)**

        **i.  Rule 23(e)(2)(C)(i):  <u>The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.</u>**

The third factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 (Advisory Committee Notes). Here, this factor is also satisfied. The relief provided by the Settlement is adequate, taking into account the costs, risk, and delay of trial and appeal; the effectiveness of the proposed method of distribution; and the terms of the proposal for awarding attorneys' fees, including the timing of payment.

The settlement provides substantial monetary payments to the class members and enables them to avoid real litigation risks. Defendant has contested this litigation at all stages. Defendant moved for summary judgment seeking to dismiss these claims as a matter of law, contending that Plaintiff's claims are preempted by the Federal Aviation Administration Authorization Act of 1944 and violate the Dormant Commerce Clause of the United States Constitution.

Lastly, the settlement enables the class members to avoid significant delay. The parties' cross-motions for summary judgment remain pending before the Court. In addition, Plaintiff had not yet filed a motion for class certification. Even if both Plaintiff's pending motion for summary judgment and forthcoming motion for class certification were resolved in Plaintiff's favor, there would still be additional discovery, additional summary judgment briefing on the issue of damages, and eventually trial. It is also likely that either side would have sought an appeal of any unfavorable

decisions or appeal of any trial verdict.  The Court further observes that litigation of this case would have moved exceptionally slowly in the current pandemic environment in which jury trials are logistically difficult and almost entirely devoted for the next 12-18 months to resolving an unprecedented backlog in criminal cases.

In any event, "[i]t has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'" *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974). Given that outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable damages, the value of the class action settlement outweighs the mere possibility of future relief after protracted and expensive litigation.

> ### ii.  Rule 23(e)(2)(C)(ii): <u>The relief provided for the class is adequate, taking into account the effectiveness of any proposed method of distributing relief to the class including the method of processing class-member claims if required.</u>

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 (Advisory Committee Notes). This factor is satisfied because the notice process constituted the best notice practicable under the circumstances, and complied with the requirements of the Federal Rules of Civil Procedure and due process. In addition, class members were given the option to opt-out—and three class members exercised their option to exclude themselves from the settlement class.

By its Order Preliminarily Approving Rule 23 Settlement [ECF 46], the Court approved the form of the proposed settlement notice.  The Court hereby finds that the Notice of Settlement fully and accurately informed the Settlement Class Members of all material elements of the proposed Settlement.  Of note, the Settlement Notice informed class members that Class Counsel

would request a 33% fee, as opposed to a one-third (i.e., 33 1/3 %) fee award.  Class Counsel agreed and amended their fee request to 33% (consistent with the Notice).  Class Counsel also voluntarily reduced their fee request by an additional $63,707.79 to account for the settlement shares for the eleven class members identified after the Final Fairness Hearing.

On November 13, 2020, following the Court's Order granting preliminary approval of the proposed class action settlement in this matter, Class Counsel disseminated the Court-approved Notice of Class Action Settlement, the Claim Form, and a return-envelope to 488 class members. After mailing the initial notice documents, Class Counsel received 56 notices returned as undeliverable. Through public records databases, Class Counsel located updated addresses for 23 of the class members whose mailed notices were returned and who did not otherwise submit their claims. Class Counsel promptly re-mailed notice documents to the new addresses for those individuals. As of March 1, 2021, 10 of those 23 class members had submitted claims. On November 13, 2020, in addition to mailing the notices, Class Counsel also sent an email notice to 488 class members for whom Defendant had provided a last-known email address.

On December 28, 2020, Class Counsel sent an email reminder notice to all class members who had not yet submitted a claim form and for whom Defendant had provided a last-known email address. On January 8, 2021, a reminder mailing was sent via First Class Mail to all class members who had not yet submitted a claim form.

In response to the notice mailings and emails, claim forms were received from 17 individuals who were not on the original class list. Class Counsel undertook investigation by interviewing these individuals, gathering documents from them related to their work for Defendant, and speaking with counsel for Defendant to obtain additional information.  Based on this investigation, Class Counsel determined that nine of these individuals should properly be

included in the Class, but the others did not meet the class definition for one reason or another (either based on the time period that they worked or the location of their work for Defendant).

As described above, after the Final Fairness Hearing and after review of additional data, the Parties agreed that there were another ten individuals who met the class definition but who were not sent the original mailed or emailed notice in this matter. Before the March 29, 2021 telephonic conference, Class Counsel provided these ten individuals with the Court-approved notice of settlement. All ten newly identified class members have submitted signed claim forms to receive their share of the settlement funds.

To date, 417 claim forms have been received from class members who are participating in this Action, producing a claim rate of 82 percent. This claims rate is substantial for wage and hour litigation and demonstrates both that Class Counsel implemented an effective notice process and that class members have responded positively to the settlement. *See generally Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (approving Rule 23 settlement on behalf of delivery drivers in wage case and noting that the claims rate was "above average at over one third of the class joining the case"). This factor is satisfied because the Court finds that the notice process was sufficient and it adequately provided notice to the class.

### iii. Rule 23(e)(2)(C)(iii): <u>The relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including the timing of payment.</u>

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23 (Advisory Committee Notes). Class Counsel has requested approval of an amended request for attorney's fees in the amount of $1,313,750.00, constituting 33% of the settlement fund minus an additional $64,000.00 (the approximate value of the settlement shares of the eleven class members identified

after the Fairness Hearing). The amended fee request is approximately 31.47% of the settlement

fund.  The Court approves Class Counsels' attorneys' fees based on a percentage of the fund.[5] In

addition, the Court approves Class Counsels' requested fee of 31.47% of the settlement amount,

which is well within the range approved by courts in the Tenth Circuit.[6] Accordingly, the Court

---

[5] District courts in New Mexico routinely approve attorneys' fees based on a percentage of fund method without a lodestar cross-check. *See Candelaria v. Health Care Serv. Corp.*, No. 2:17-cv-404-KG-SMV, 2020 U.S. Dist. LEXIS 202390, at \*15-16 (D.N.M. 2020); *see also Barela v. Citi Corp.*, No. 1:11-cv-506-KG-GBW, ECF 93 (D.N.M Sept. 15, 2014) (awarding percentage of fund in wage and hour case without lodestar cross check); *Ramah Navajo v. Jewell*, 167 F. Supp. 3d at 1241-42 (D.N.M. 2016); *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1097 (D.N.M. 1999); *Ramah Navajo Chapter* v. Kempthorne, Case No. CIV 90-0957 LH/KBM, 2008 U.S. Dist. LEXIS 143974, 2008 WL 11342943, at \*5 (D.N.M. Aug. 27, 2008) (same); *Robles v. Brake Masters Sys., Inc.*, Case No. CIV 10-0135 JB/WPL, 2011 U.S. Dist. LEXIS 14432, 2011 WL 9717448, at \*19 (D.N.M. Jan. 31, 2011); *Acevedo v. Sw. Airlines Co.*, 1:16-CV-00024-MV-LF, 2019 U.S. Dist. LEXIS 213691, 2019 WL 6712298, at \*1 (D.N.M. Dec. 10, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 4571, 2020 WL 85132 (D.N.M. Jan. 7, 2020); *Daye v. Cmty. Fin. Serv. Ctrs., LLC*, 1:14-cv-759-KK-KBM, ECF 195 (D.N.M. August 15, 2019); *J.O. v. Dorsey, et al.*, No. 1:11-cv-254-MCA-GBW, ECF 157 (D.N.M. Nov. 19, 2014); *Willett v. Redflex Traffic Systems, Inc.*, No. 1:13-cv-1241-JCH-LAM (D.N.M. Nov. 24, 2016); *Dejolie v. T&R Market, Inc.*, No. 1:17-cv-733-KK-SCY (D.N.M. Dec. 10, 2018); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-130-PJK-GBW, ECF 65; *Yazzie v. Gurley Motor Co.*, No. 1:14-cv-555-JAP-SCY, ECF 196 (D.N.M. Oct. 28, 2016).  Nonetheless, this Court required Class Counsel to submit billing records so the Court could conduct a lodestar cross-check as part of its reasonableness review.  The Court has performed that cross-check and considered its results in evaluating the fairness and reasonableness of Class Counsel's fee request.

[6] *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis."); *Cook v. Rockwell Int'l Corp.*, 2017 U.S. Dist. LEXIS 181814, 2017 WL 5076498, at \*1-2 (D. Colo. Apr. 28, 2017) (explaining forty percent fee falls within acceptable range in Tenth Circuit); *Shaw v. Interthinx, Inc.*, 2015 U.S. Dist. LEXIS 52783, 2015 WL 1867861, at \*6 (D. Colo. Apr. 22, 2015) (finding 1/3 of $6 million dollar fund, or $2 million, in wage and hour case to be "well within the percentage range approved in similar cases") (collecting cases); *Campbell v. C.R. England, Inc.*, 2015 U.S. Dist. LEXIS 134235, 2015 WL 5773709, at \*6 (D. Utah Sept. 30, 2015) (awarding 1/3 of $5,000 fund in FLSA collective action). *Blanco v. Xtreme Drilling & Coil Services, Inc.*, 2020 U.S. Dist. LEXIS 126155, 2020 WL 4041456, at \*5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"); *Peck*, 2018 U.S. Dist. LEXIS 28630, 2018 WL 1010944, at \*3 (D. Colo. Feb. 22, 2018) (finding 37.5% fee in wage and hour hybrid action to be "well within the range for a contingent fee award") (collecting cases); *Farley.*, 2014 U.S. Dist. LEXIS 154059, 2014 WL 5488897, at \*4 (D. Colo. Oct. 30, 2014) (30.3% fee of $2.3 million fund in wage and hour hybrid action); *Whittington*, 2013 U.S. Dist. LEXIS 161665, 2013 WL 6022972, at \* 6 (explaining that the fees and costs of 39% of the fund were "within the normal range for a contingent fee award" in wage and hour hybrid class action); *Shaulis v. Falcon Subsidiary LLC*, 2018 U.S. Dist. LEXIS 164775, 2018 WL 4620388, at \*2 (D. Colo. Sept. 26, 2018) (finding 1/3 of common fund to be reasonable because the award was similar to fee awards in "similar wage and hour cases in this District"); *Williams*, 2007 U.S. Dist. LEXIS 67368, 2007 WL 2694029, at \*6 (awarding 35% fee in employment class action); 4 *Newberg On Class Actions* § 14:6 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Enegren v. KC Lodge Ventures LLC*, 2019 U.S. Dist. LEXIS 177192, 2019 WL 5102177, at \*9 (D. Kan. Oct. 11, 2019) (awarding 40% of fund in wage collective action); *In re Bank of Am. Wage & Hour Employment Litig.*, 10-MD-2138-JWL, 2013 U.S. Dist. LEXIS 180056, 2013 WL 6670602, at \*3 (D. Kan. Dec. 18, 2013) (awarding 18.25 million plus up to $900,000 in costs from $73 million dollar settlement fund in hybrid wage case).

approves the disbursement of attorneys' fees to Class Counsel in the amount of $1,313,750.00.

In addition, the Court approves Class Counsels' costs incurred in pursuing this litigation in the amount $8,350.18, which includes costs associated with administering the settlement, court fees, electronic research, postage and courier fees, photocopies, fees for hiring DOL consulting expert, and fees of the private mediator. The out-of-pocket litigation expenses and costs incurred by Class Counsel are appropriate. *See Candelaria v. Health Care Serv. Corp.*, No. 2:17-cv-404-KG-SMV, 2020 U.S. Dist. LEXIS 207337, at *10 (D.N.M. 2020) (in addition to awarding the cost of hiring a settlement administrator, court awarded class counsel all "actual out-of-pocket litigation expenses and costs incurred in prosecuting this case, including costs for court fees, electronic research, postage and courier fees, photocopies, and the fees of the private mediator[.]"). In addition, the Court approves costs of $7,573.00 to the third-party settlement administrator.

### iv. Rule 23(e)(2)(C)(iv): The relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(3).

Under this factor, the parties are required to "file a statement identifying any agreement made in connection with the proposal." Here, the Court finds that this factor is satisfied because the parties have filed the Settlement Agreement [Doc. 44-1] and have represented that there is no other agreement between them. *See* Doc. 51 at 26 ("Here, the only agreement in this matter is the Settlement Agreement, which is on file with the Court.").

### 4. Rule 23(e)(2)(D): The proposal treats class members equitably relative to each other.

The final factor seeks to prevent the "inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23 (Advisory Committee Notes). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different

14

ways that bear on the apportionment of relief." *Id.* Here, all class members asserted claims for unpaid overtime wages under the NMMWA, and therefore, settlement shares for each class member will be derived using an identical formula applied to all class members. Therefore, because there is only a single claim at issue and the settlement shares will be calculated using an identical formula, all class members are treated equitably relative to each other.

In addition, the Settlement Agreement provides for an inventive payment of $25,000 to George Montgomery, the Named Plaintiff. Courts routinely recognize the importance of incentive awards in wage cases of this nature, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005).[7]

The requested incentive payment is in the range of incentive payments approved in similar wage and hour cases. *See, e.g., Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. 2015) (approving incentive award of $20,000.00); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *16-17 (N.D. Cal. 2007) (district court awarded each of the class representatives in an overtime class action a service award

---

[7] *See also UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. App'x. 232, 235 (10th Cir. Sept. 11, 2009) "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.") (unpublished)(internal quotes and citation omitted); *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 U.S. Dist. LEXIS 144366, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (unpublished) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.") (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, 2009 U.S. Dist. LEXIS 82522, 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (unpublished) ("The practice of granting incentive awards to Class Representatives is common and widespread in class litigation.") (citations omitted).

of $25,000.00); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (approving a $50,000 service award); *Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (award of $50,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000). Therefore, the Court approves the incentive payment to George Montgomery in the amount of $25,000.00.

**B.  The Settlement also Satisfies the *Rutter* Factors.**

In the Tenth Circuit, courts likewise consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002); *see also Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (applying *Rutter* factors following the 2018 amendments to Fed. R. Civ. P. 23(e)).

First, "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Settlement was the product of real, arms-length negotiations between experienced counsel well-versed in the legal and factual issues presented by this case. Each party was represented by competent counsel who conducted the litigation vigorously and professionally, and there is no indication or evidence that any party was unfairly pressured or coerced into agreeing to the

Settlement. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137-38 (D. Colo. 2009).

Second, as discussed above, serious questions of law and fact regarding the merits of Plaintiffs' claims and Defendant's defenses place the ultimate outcome of the litigation in doubt. Based on the complexity of the case, the novelty of the legal issues, the substantial risks and uncertainty of the outcome on both liability and certification issues, as well as the need to establish damages, Class Counsel believe that the Settlement is an excellent one and is fair and in the best interests of the Class Members. Although it is not the role of the Court at this stage of the litigation to evaluate the merits, "it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. at 693-94.

Third, the value of immediate recovery far outweighs the possibility of future relief after protracted and expensive litigation. Under the Settlement, Defendant agrees to fund the non-reversionary Gross Settlement Amount of $4,175,000.00.  This amount is more than 65% of what Class Counsel calculated as the potential damages award after trial.  *See* ECF 51 at 20 (calculating "total potential damages for the class had they succeeded on all aspects of their case [as] roughly $6.3 million").

Plaintiff and Class Counsel are well-acquainted with the risks presented by continued litigation. The Court was presented in the parties' briefing on the pending cross-motions for summary judgment with questions of law and fact regarding the outcome of this matter. Primarily, the outcome of the federal preemption issues raised by Defendant could substantially impact the outcome of the litigation and result in no recovery at all for the Class Members. The outcome of protracted litigation is therefore far from certain, and Plaintiffs face substantial risks of not

prevailing on the claims, and substantial risk of even being able to proceed with any class-wide claims. Further, any resolution of the liability questions and class certification issues is likely years away. The parties have not yet litigated class certification, and Defendant would likely seek an immediate appeal of any decision contrary to its position on class certification—further delaying the final outcome of the litigation. *See* Fed. R. Civ. P. 23(f). Thus, the value of immediate recovery here is substantial, and the possibility of future recovery for the Class is by no means likely, let alone guaranteed. The benefits of a guaranteed recovery today outweigh an uncertain result several years in the future.

Fourth, the parties assess the Settlement to be fair and reasonable, and not a single Class Member has objected to the Settlement. *See Rutter*, 314 F.3d at 1188. As discussed above, Class Counsel are experienced class action litigators who are very knowledgeable about the claims, remedies, and defenses at issue in this litigation. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *37-*38 (W.D. Okla. 2008) (same). "Here, the parties' counsel—among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions—unanimously support this settlement." *Lucas*, 234 F.R.D. at 695. As such, this factor further supports granting approval.

For the foregoing reasons, the Court finds that the Rule 23 Class Action Settlement should be and is hereby finally approved. The terms of the Settlement are in all respects fair, adequate, and reasonable. The Court has considered all of the evidence presented, including evidence regarding the strength of the Plaintiff's case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in the Settlement; the extent

18

of investigation and the discovery completed, and all of the circumstances that led to the Settlement. The Court has further considered that not a single class member objected to the Settlement and only three (3) Class Members submitted requests to exclude themselves from the Settlement. As set forth above, the Court grants final approval of the Settlement and the parties are directed to perform their respective obligations under the Settlement Agreement.

\*      \*      \*

Accordingly, the Court **FINDS** that the Settlement Agreement meets the requirements for final approval under Fed. R. Civ. P. 23(e) and **ORDERS** that settlement shall be consummated and completed in accordance with the terms and conditions of the Settlement Agreement.

This Court finds that the Class Members were given adequate notice and a fair and reasonable opportunity to object to the settlement. No Class Member objected to the settlement. The Class Members who made valid and timely requests for exclusion are excluded from the class and settlement, are not bound by this order, and may pursue claims on their own behalf. There are three such persons: (1) Nathaniel Evans; (2) Marcus Hubbard; and (3) Juan Chavez. *See Notices of Filing Opt-Outs,* [Doc. 47] and [Doc. 48].

This order is binding on all Class Members, except those three (3) individuals who validly and timely opted out from the settlement.

This Court approves the individual and class releases set forth in the parties' class action Settlement Agreement. The Released Claims are consequently compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this order. Having approved the parties' Settlement Agreement, this matter has now been resolved, and the Court **DISMISSES** this action **WITH PREJUDICE**. The Court reserves jurisdiction over all matters arising out of the settlement and the administration of the settlement.

19

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***